1
2
3
4               UNITED STATES DISTRICT COURT
5           NORTHERN DISTRICT OF CALIFORNIA
6

7   ANDY CRUZ GOMEZ,              Case No. 23-cv-06608-WHO

8           Plaintiff,

9      v.                 **ORDER ON CRUZ'S MOTION FOR SUMMARY JUDGMENT**

10   NEW CHAMPION PROMOTIONS, LLC, et al.,     Re: Dkt. No. 83

11          Defendants.

12       Plaintiff Andy Cruz Garcia ("Cruz") alleges that defendants New Champion Promotions

13   ("NCP") and NCP's President Jesse Rodriguez ("Rodriguez") (together, "defendants") unlawfully

14   withheld portions of his earnings from boxing matches in violation of the Ali Act and several New

15   York and California state laws. Cruz now moves for summary judgment on his Third Amended

16   Complaint ("TAC"), and for summary judgment on defendants' First Amended Cross Complaint

17   ("FAXC"). His motion rests on an interpretation of the Boxing Promotional Agreement ("BPA")

18   into which Cruz, NCP and Matchroom Boxing USA, LLC ("Matchroom")[1] entered that appears

19   implausible: his theory is that NCP essentially waived its rights to compensation in the BPA. I

20   conclude that the BPA is either: (1) ambiguous, because it does not discuss NCP's rights to

21   compensation or whether it supersedes the prior agreement between Cruz and NCP, among other

22   things; or (2) as a matter of law it does not supersede the preexisting contract between Cruz and

23   NCP, which specified Cruz's rights (and by extension, NCP's as well) for each bout. Regardless,

24   extrinsic evidence is necessary to determine the parties' intent and rights to compensation: this

25
26
27
28

---

[1] Claims against Matchroom are stayed. Order Granting Joint Stipulation to Stay [Dkt. No. 71]. As a part of the stipulation to stay, Matchroom "agree[d] to be bound by any court ruling, decision or judgment in this action and waive[d] its right to challenge any such ruling, decision or judgment in a subsequent arbitration." *Id.* In the context of this Order, then, "defendants" refers only to NCP and Rodriguez.

United States District Court
Northern District of California

1    evidence will include any oral agreements to amend the Cruz-NCP agreement (the alleged 75/25

2    split suggested by NCP), the actual revenue splits in the two state bouts about which there is some

3    evidence in the record, and any discussions between the parties about any of this and the formation

4    of any agreements.  Except with respect to the one count involving the disclosures required by the

5    Ali Act, disputes of fact preclude granting Cruz's motion.

**BACKGROUND**

**A.    Factual Background**

8            The following facts are not in dispute unless indicated.  Cruz is a world-renowned

9    professional boxer from Cuba.  TAC ¶ 2.  He won the gold medal at the 2020/2021 Olympics in

10   Tokyo.  TAC ¶ 2.  After the Olympics, he decided to leave Cuba to turn professional.  TAC ¶ 2.

11   In November 2022, he entered into a promotional agreement ("the Cruz-NCP Agreement") with

12   NCP in which the parties agreed that NCP would act as Cruz's exclusive promotor.  TAC ¶ 3.  In

13   the boxing context, a promoter acts to "put on professional boxing matches" starring the fighter

14   being promoted.  TAC ¶ 3.

15           The Cruz-NCP Agreement states, among other things, that Cruz's purse for his first fight

16   shall be mutually negotiated and agreed upon by both parties, but shall not be less than twenty-five

17   thousand dollars, as will each successive bout as long as he keeps winning.[2]  Cruz-NCP

18   Agreement [Dkt. No. 84-2] at § IV(a)-(b).  The Agreement has a five-year term.  *Id.* at § 2.  No

19   specific amount of compensation for NCP is stated.  But Cruz "acknowledges and agrees that the

20   Promoter intends and is entitled to benefit from the Boxer's bouts and that it would be

21   unreasonable for the Boxer and not in the spirit of this Agreement to require the Promoter to

22   promote a fight for the Boxer where the Boxer Promoter[sic] would not benefit from a fight" and

23   that the Promoter has the "absolute right to assign, license or transfer any or all of the rights

24   granted to it . . . including, without limitation, the right to Co-promote the bouts . . . ."  *Id.* at §§

25   IV(d), X.

26

27   _____

[2] A "purse" as defined by the BPA, is "[t]he fee owed to the Fighter for participating in a Bout."
28   BPA [Dkt. No. 83-3] § 1.  A "bout," in turn, is defined as a "boxing match licensed by the relevant
     sanctioning body under the applicable laws and regulations."  *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In its capacity as Cruz's promoter, NCP did not put on any matches involving Cruz, but

2    instead "took" Cruz to Matchroom, which Cruz describes as "one of the largest boxing

3    promotional companies in the world." TAC ¶ 5. Cruz, Matchroom, and NCP signed the BPA that

4    allowed Matchroom to act as Cruz's co-promoter. TAC ¶ 6. The contract refers to NCP as "the

5    Promoter" throughout, refers to the three parties collectively as "the Parties," and states at the

6    outset: "This Agreement will set forth and confirm the understanding and agreement the Parties

7    hereto have reached concerning the Fighter's and Matchroom's responsibilities and obligations to

8    one to the other [sic]. For clarity, this Agreement shall supersede and replace any prior agreement

9    or understanding (whether written or oral) between the Parties." BPA 5.

10    The BPA includes a number of provisions that detail Cruz's signing bonuses, guaranteed

11    purses, and Matchroom's obligations a co-promoter. TAC ¶ 7. It provides that Cruz would

12    receive purses of $125,000, $150,000, $175,000, and $200,000 for each of the four bouts

13    scheduled to occur within the first year of the relationship between the parties, along with a

14    signing bonus of $250,000. BPA §§ 5–6. On the issue of payment method, the BPA states: "All

15    Purses referred to under this Agreement shall be payable by Matchroom to the Promoter and as

16    directed by the Promoter, to Fighter within five (5) days of the conclusion of each Bout." BPA §

17    8.2. It is silent on the issue of method and quantity of financial compensation to NCP and

18    Matchroom, except for a percentage Matchroom would receive for sponsorships or its commission

19    in the event that Cruz worked with a Third-Party promoter.[3] BPA §§ 7.3, 9.

20    Cruz alleges that in the process of transferring the payments from Matchroom to Cruz after

21    bouts 1 and 2, defendants retained a portion of the funds without his permission in violation of the

22    BPA. TAC ¶¶ 19–22. He also contends that defendants wrongfully withheld a portion of his

23    signing bonus. TAC ¶¶ 10–18. In total, Cruz alleges that defendants unlawfully withheld

24    $124,465. TAC ¶ 24. After the second bout, Cruz requested that Matchroom withhold a portion

25    of his perceived earnings in escrow awaiting the outcome of this case, as defendants contend those

---

[3] According to defendants, in an effort to be "transparent and unlike other boxing promoters," NCP at some told Cruz that he would receive 75% of the co-promoter fee and bonus for each of the first year fights while NCP would receive the remaining 25%. Opposition to the Motion for Summary Judgment [Dkt. No. 84] 4.

1    funds rightfully belongs to them.[4]  TAC ¶¶ 161–164.

2        Cruz objects to the introduction of two additional agreements between Cruz and

3    Matchroom for his first two state bouts, which were offered by defendants.  As discussed later, *see*

4    Discussion Part I, I overrule those objections.  The first bout agreement provides that Matchroom

5    will "remit directly" to Cruz a purse in the amount of $62,500 less applicable deductions, and that

6    Cruz will have no right to benefit in any revenues or other rights associated with the bout.  State

7    Bout 1 Agreement [Dkt. No. 84-1] 76, § 2.1.  The second bout agreement calls for Cruz to be paid

8    $75,000 by Matchroom as "full payment" for his performance pursuant to the bout contract.  State

9    Bout 2 Agreement [Dkt. No. 84-1] 79.  There is no mention of defendants in either contract.

10       **B.    Procedural Background**

11       Cruz filed his initial complaint on December 22, 2204, and his First Amended Complaint

12   on February 27, 2024.  *See* Complaint [Dkt. No. 1], First Amended Complaint [Dkt. No. 27].

13   Following NCP's motion to dismiss the amended complaint, I filed an order providing guidance in

14   advance of that hearing, asking parties to address questions raised by the complaint and the

15   briefing on the motion to dismiss.[5]  [Dkt. No. 39].  After the hearing, I granted the motion to

16   dismiss with leave to amend, again raising questions for plaintiff to address in his Second

17   Amended Complaint.  Minute Entry and Order Granting the Motion to Dismiss [Dkt. No. 42].

18   Cruz filed his Second Amended Complaint on June 11, 2024, and defendants again moved to

19   dismiss and strike portions of the complaint.  Second Amended Complaint [Dkt. No. 48], Motions

20   to Dismiss and Strike Second Amended Complaint [Dkt. Nos. 52, 53].  Concurrently, Matchroom

21   moved to compel arbitration and dismiss the Second Amended Complaint.  [Dkt. No. 50].

22       After a hearing on the motions, I partially granted the motion to dismiss and motion to

23   compel arbitration, and denied defendants' motion to strike, granting leave to amend.  *See* Order

24

25   ───────────────

     [4] In the motion before me, Cruz states that he is owed $147,280 due to defendants' actions.
26   Motion for Summary Judgment [Dkt. No. 83] 13.  And, in reply, he states that Matchroom Boxing
     holds $150,000 in escrow.  Reply in Support of the Motion for Summary Judgment [Dkt. No. 85]
27   6.

28   [5] Specifically, I asked the parties to address (1) the BPA's choice of law provision; (2) issues
     related to arbitration; and (3) NCP's consideration as a signatory to the BPA.

United States District Court
Northern District of California

on Motions to Dismiss, Strike, and Compel Arbitration ("Prior Order") [Dkt. No. 65].  As a part of that Prior Order, I held that Cruz's state law claims arising from the BPA are governed by New York law.  *See* Prior Order at 10–11.

Cruz filed his operative Third Amended Complaint on September 16, 2024.  ("TAC") [Dkt. No. 66].  Defendants answered the complaint, including a crossclaim against Matchroom and a counterclaim against Cruz.  [Dkt. No. 68].  Shortly thereafter, parties stipulated to stay arbitration of Cruz's TAC against Matchroom, to arbitrate defendants' cross-claims against Matchroom and Matchroom's cross-claims against defendants, and to stay the cross-claims in this case.  *See* Stipulation and Order Granting Stipulation [Dkt. Nos. 69, 71].  Defendants filed their operative First Amended Cross-Complaint against Cruz on November 6, 2024. ("FAXC") [Dkt. No. 73].

The TAC alleges nine causes of action against the defendants: (1) violation of The Ali Act's Firewall Provision, TAC  ¶¶ 69–80; (2) violation of The Ali Act's Disclosure Provision, TAC ¶¶ 81–89; (3) violation of California's Business and Professions Code §§ 18628 et seq., TAC ¶¶ 90–107; (4) breach of contract, TAC ¶¶ 108–136; (5) breach of duty of good faith and fair dealing, TAC ¶¶ 137–167; (6) breach of fiduciary duty, TAC ¶¶ 168–179; (7) conversion, TAC ¶¶ 180–184; and (8) violation of California Penal Code § 496, TAC ¶¶ 185–194.  Cruz also seeks (9) declaratory relief concerning the legal rights and duties of the parties, against all defendants, TAC ¶¶ 195–198.[6]

Defendants' FAXC alleges three causes of action against Cruz: (1) breach of covenant of good faith and fair dealing, FAXC ¶¶ 25–29; (2) unjust enrichment, FAXC ¶¶ 30–35; and (3) declaratory relief concerning the legal rights and duties of the parties as related to the BAP. FAXC ¶¶ 36–39.

On May 7, 2025, Cruz moved for summary adjudication on all causes of action included against defendants in the TAC and on all causes of action alleged against him in the FAXC.  *See* Motion for Summary Judgment ("MSJ") [Dkt. No. 83].  Defendants opposed the motion.

---

[6] Including against Matchroom.  TAC ¶¶ 195–198.  As I have explained, arbitration of that cause of action is stayed against Matchroom.

United States District Court
Northern District of California

1    ("Oppo.") [Dkt. No. 84]; *see also* Notice of Errata [Dkt. No. 86].  Defendants replied on June 2,

2    2025. ("Repl.") [Dkt. No. 85].  I held a hearing on the motion on June 11, 2025.

3                                              **LEGAL STANDARD**

4         Summary judgment on a claim or defense is appropriate "if the movant shows that there is

5    no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

6    law." Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show

7    the absence of a genuine issue of material fact with respect to an essential element of the non-

8    moving party's claim, or to a defense on which the non-moving party will bear the burden of

9    persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has

10   made this showing, the burden then shifts to the party opposing summary judgment to identify

11   "specific facts showing there is a genuine issue for trial." *Id.*  The party opposing summary

12   judgment must then present affirmative evidence from which a jury could return a verdict in that

13   party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

14        On summary judgment, the Court draws all reasonable factual inferences in favor of the

15   non-movant. *Id.* at 255.  In deciding a motion for summary judgment, "[c]redibility

16   determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

17   facts are jury functions, not those of a judge." *Id.*  However, conclusory and speculative testimony

18   does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See*

19   *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

20                                              **DISCUSSION**

21   **I.   Evidentiary Objections**

22        In support of their Opposition, defendants include three declarations and nine related

23   exhibits. *See* Dkt. Nos. 84-1, 84-2, 84-3, 84-4.  Cruz asserts that these documents (and the

24   Opposition to the extent that it relies on those documents) are largely inadmissible to support the

25   defendants' arguments suggesting a dispute of material fact.  Repl. 1–5.  Because this assertion

26   impacts my ruling on the motion, I address it before I address the parties' substantive arguments.

27        Cruz bases his admissibility arguments on several grounds: relevance, hearsay, improper

28   expert opinion, and the parol evidence rule.  Repl. 4–5.  "In motions for summary judgment with

6

1   numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize

2   each objection and give a full analysis of each argument raised.  This is especially true when many

3   of the objections are boilerplate recitations of evidentiary principles or blanket objections without

4   analysis applied to specific items of evidence."  *Doe v. Starbucks, Inc.*, No. 08-CV-0582-AG,

5   2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009).  Here, Cruz supports his evidentiary

6   objections with only brief explanations and by listing page and line numbers for documents he

7   seeks that I remove from my consideration of the motion.

8       I first note that it is unnecessary for Cruz to file relevance objections in a motion for

9   summary judgment.  The standard for summary judgment, after all, is that I may only award

10  summary judgment when there is no dispute of "material" fact.  I may not consider any irrelevant

11  evidence to decide the motion, and I will not.  Since these relevance objections are superfluous, I

12  decline to address them.  And, the Ninth Circuit has long held "as a general principle" that "we

13  treat the opposing party's papers more indulgently than the moving party's papers."  *Lew v. Kona*

14  *Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985); *see also Carmen v. San Francisco Unified Sch. Dist.*,

15  237 F.3d 1026, 1029 (9th Cir. 2001) (assuming without deciding that statements present in a

16  declaration objected to on hearsay grounds "would be cognizable in opposition to summary

17  judgment and would establish a genuine issue of fact").  I likewise decline to address Cruz's

18  boilerplate hearsay objections at this stage. To that end, I address only Cruz's (again, minimal)

19  arguments concerning parol evidence and improper expert testimony.[7]

20          A.      **Improper Expert Testimony**

21      Cruz objects to the declaration of Steve Bash, an expert witness on behalf of the

22  defendants, for improperly offering legal opinions.  Repl. 4.  "While testimony on an ultimate

23  issue is not per se improper, an expert witness cannot give an opinion as to her legal conclusion,

24  *i.e.*, an opinion on an ultimate issue of law."  *Camenisch v. Umpqua Bank*, 763 F. Supp. 3d 871,

25  881 (N.D. Cal. 2025) (J. Pitts) (cleaned up) (citing *Hangarter v. Provident Life and Acc. Ins. Co.*,

26

27  [7] Cruz finally objects to defendants' exhibits appended to the deposition of George Gallegos
    because they do not include the reporter's certificate from the deposition transcript.  Repl. 4.  I
28  accept defendants' Notice of Errata that includes those certificates a sufficient remedy.  *See* Dkt.
    No. 86.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    373 F.3d 998, 1016 (9th Cir. 2004)).  Expert "testimony cannot be used to provide legal meaning

2    or interpret the [contracts] as written."  *McHugh v. United Service Auto. Ass'n*, 164 F.3d 451, 454

3    (9th Cir. 1999).  Cruz broadly "objects to paragraphs" 6–13 of the Bash Declaration in whole or in

4    part, contending that they "generally step[] beyond the role of an expert witness to offer opinions

5    of law and his own interpretations of the BPA."  Repl. 4.  Cruz provides no further explanation for

6    his objection.

7            Bash is a California attorney who has experience representing professional boxing and

8    MMA fighters and promotors.  Bash Decl. [Dkt. No. 84-3] ¶ 2.  He also has experience with

9    contract negotiation between and on behalf of clients of all levels in boxing.  *Id.*  His company,

10   Bash Boxing Inc., has been a licensed promoter "in multiple states and countries."  Bash Decl. ¶ 3.

11   His declaration describes what is, in his view, a typical relationship between a boxer, a regional

12   promoter, and a major promoter.  Defendants cite to his declaration as evidence to support their

13   view that the relationship between Cruz, NCP and Rodriguez, and Matchroom, exemplifies typical

14   practices in the boxing industry.

15           Bash opines that "[t]he relationship and history of the parties appears to be a common

16   occurrence and arrangement."  Bash Decl. ¶ 6.  He explains that he views the relationship as

17   bearing markers of both a "Provision of Services" agreement and a Co-Promotional agreement.

18   Bash Decl. ¶ 10.  Notably, however, Bash declares that the BPA at issue in this case is "the first

19   time that [he has] reviewed any agreement that purports to be a Co-Promotional Agreement

20   wherein there is no mention or mechanism on how the co-promoters will be paid."  Bash Decl. ¶

21   12.  In this way, Bash testifies, the arrangement is more like a Provision of Services agreement.

22   Critically, Bash does not testify to any legal conclusion concerning whether he believes the

23   contract at issue to be valid, whether he concludes that any party has breached the contract, or

24   whether the defendants acted in violation of the Ali Act, California Business Professions Code §§

25   18628 et seq., or the California Penal Code §§ 496.  *See* Bash Decl. 1–7.  His declaration is

26   adequately presented at the summary judgment stage.  Cruz's evidentiary objections concerning

27   the Bash declaration are overruled.

28

### B.    Parol Evidence

Cruz also seeks to exclude some of defendants' evidence as parol evidence and therefore inadmissible under New York contract law.  Again, Cruz only minimally explains his objection, including a legal standard on "New York Law on Extrinsic and Parol Evidence," stating that one declaration "offers inadmissible parol evidence" at specific paragraphs, and that exhibits A, B, and D of another declaration contain parol evidence without further explanation.  Repl. 4.  Substantively, Cruz states only this: "As the BPA is not at all ambiguous as to the purse amounts to be paid to Cruz, New York law prevents the Court to looking [sic] outside testimony or parol evidence to create an ambiguity."  Repl. 6.

As Cruz states, New York contract law provides:

> [W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.  Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add or vary the writing.

*W.W.W. Assoc. v. Fiancontieri*, 77 N.Y. 2d 157, 163 (1990).  Only when a contract is not "clear" may extrinsic evidence come in to interpret it.  *Id.*

That said, "Whether or not a writing is ambiguous is a question of law to be resolved by the courts."  *Id.*  Further, "an ambiguity never arises out of what was not written at all, but only out of what was written so blindly and imperfectly that its meaning is doubtful."  *Greenfield v. Philles Records, Inc.*, 98 N.Y. 2d 562, 573 (2002) (citation omitted).  I conclude from the record before me now that the contracts at issue contain ambiguities.

For example, the BPA explicitly states that the agreement is between Matchroom, NCP (the "Promoter"), and Cruz.  BPA 5.  The BPA defines the three collectively as the "Parties."  *Id.*  And it states that "this Agreement shall supersede and replace any prior agreement or understanding (whether written or oral) between the Parties."  *Id.*  There is no prior agreement between the three Parties, and it is disputed whether that clause contemplates superseding the Cruz-NCP Agreement.

United States District Court
Northern District of California

Another ambiguity stems from the Payment clause in the BPA.  Section 8.2 reads: "All Purses referred to under this Agreement shall be payable by Matchroom to the Promoter and as directed by the Promoter, to Fighter within five (5) days of the conclusion of each Bout . . . ." BPA § 8.2.  No amount is stated.  Bash indicated that it was unusual not to clarify the rights of the co-promoters in the agreement.  Bash Decl. ¶ 12.  Does the BPA fail to clarify the compensation amount because the NCP-Cruz Agreement was not superseded and controls the compensation of the Promoter under the BPA agreement?  Was there some other understanding about the split of the purse, such as the 75/25 suggestion made by NCP to be more fair to Cruz?  The bottom line is that the confusion about NCP's lack of consideration in the BPA is grounds for looking outside the four walls of the written contract to better understand the language included within and the parties' intent.  *See* Prior Order 13 n.6 (citing *CBI Cap. LLC v. Mullen*, 2020 WL 4016018 at *6 (S.D.N.Y. July 16, 2020)).

For these reasons, at least, Cruz's objections to defendants' documents pursuant to the parol evidence rule are overruled.[8]

## II.    Cruz's Third Amended Complaint

In his TAC, Cruz alleges nine causes of action against NCP and Rodriguez.  TAC ¶¶ 69–198.  His final cause for declaratory relief is additionally alleged against Matchroom Boxing. TAC ¶¶ 195–98.  In his motion, he first requests that I grant summary judgment in favor of each of his claims.

### A.    Claims Arising Under the Ali Act

The first two claims of Cruz's TAC arise under the Ali Act.  As I explained in the Prior

---

[8] Cruz's final evidentiary objections are about Exhibits F and G to the Gallegos Declaration.  Repl. 5.  Those documents purport to be separate agreements between Matchroom and Cruz about the first and second bout earnings, respectively.  Gallegos Decl. 75–79.  Cruz's objections state only: "Irrelevant; Hearsay; Lacks Foundation or Testimony to Authenticate it."  Repl. 5.  Gallegos, counsel for Rodriguez and NCP, in his declaration states that Exhibits F and G were produced by Matchroom in response to NCP's Demand for Production earlier in the case.  Gallegos Decl. 2.  For the same reasons that I overrule Cruz's objections rooted in the parol evidence rule, I likewise overrule his objections concerning the admissibility of these bout agreements.

Order, the purpose of the Ali Act is to "address certain troubling business practices within the [boxing] industry," and specifically delineate the roles and responsibilities of promoters, managers, and their relationship to a fighter covered by the Act.  *See* Prior Order 5–6.

> There is a definite conflict of interest between the fighter and his promoter . . . The job of the promoter is to go out and get as much money as he possibly can get from television, from the site, from foreign rights, from sponsorships, etc. and then to pay the fighter as little as he possibly can.  The reason for this is the difference goes to the promoter. . . . Typically managers . . . are paid based upon a percentage of the boxer's purse. . . . [I]t [is] essential that managers . . . serve and protect the interests of the boxer . . . . It is not plausible for a boxer to receive proper representation and counsel from a manager if the manager is also on the payroll of a promoter.

*Franklin v. Haak*, No. 19-10137, 2020 WL 344848 at *4–5 (E.D. Mich. Jan. 21, 2020) (quoting *Mohammad Ali Boxing Reform Act: Hearing on S. 2238 Before the S. Comm. On Commerce, Sci., and Transp.*, 105th Cong. 16 (July 23, 1998); and then quoting the Senate Report of the Ali Act, S. Rep. No. 106-83 at 11 (1999).  Cruz contends that defendants violate two provisions of the Ali Act.

### 1.  The Firewall Provision

To protect boxers from conflicts of interest that may arise from any overlap between the interests of the promoters and managers, the Ali Act contains a provision titled: "Firewall Between Promoters and Managers."  15 U.S.C. § 6308.  It reads:

> (1) In General
>    It is unlawful for –
>    (A) A promoter to have a direct or indirect financial interest in the management of a boxer; or
>    (B) A manager—
>        (i)   To have a direct or indirect financial interest in the promotion of a boxer; or
>        (ii)  To be employed by or receive compensation or other benefits from a promoter, except for amounts received as consideration under the manager's contract with the boxer.

*Id.* at § 6308(b).  Cruz seeks summary adjudication on his first cause of action alleging a violation of the Firewall provision of the Ali Act because defendants, while acting as Cruz's promoter, took money from Cruz's purses.  MSJ 5–7.  It is undisputed that defendants took their compensation

11

United States District Court
Northern District of California

1   from the portion of money given by Matchroom to NCP to direct to Cruz.  The parties dispute

2   whether the sum total of that money formed Cruz's "purse" or whether only a portion of that sum

3   did.

4        Cruz claims that by paying themselves directly from what he views are the purses,

5   defendants "ha[d] a direct or indirect financial interest in the management of a boxer."  He

6   explains that "[t]he practical effect of the firewall provision is to outlaw a promoter paying a

7   boxing manager from the profits of a boxing event, and to outlaw a promoter demanding payment

8   of any part of a boxer's purse from a boxing match."  MSJ 6.

9        It appears that this is not an oft-cited area of the law, and Cruz cites to no caselaw

10  definitively explaining this interpretation of the "practical effect" as widely understood.  To me, it

11  is not clear that this is what the Ali Act contemplates as a conflict of interest.  Nor does it appear

12  that way to the only other court I have found that has addressed the issue.  In *Salita Promotions*

13  *Corp. v. Ergashev*, the fighter argued that "a promoter is only allowed to pay a boxer the

14  contracted purse to fight; the promoter cannot take money from a boxer."  No. 20-12547, 2021

15  WL 3510967 at *8 (E.D. Mich, 2021).  The court held:

16

17      But that is not what the Act says. . . . § 6308 only prohibits a financial conflict of interest
        between a boxer's manager and promoter.  Requiring that [the fighter] pay [his Promoter] a

18      percentage of his earnings for a fight the company does not promote does not give [his
        Promoter] a financial interest in [the fighter's] management, or vice versa.  Rather, the 25

19      percent is in consideration of [the fighter's] overall promotional efforts, even if it did not
        promote a particular fight."

20

21  *Id.*

22       That makes sense.  Based on the language of the statute, and the contents of the Senate

23  hearing and Senate Report on the Ali Act, the purpose of the Firewall provision is to prevent

24  potential collusion between a manager and a promoter that creates a financial conflict of interest.

25  That it is "typically" a manager who is paid from a fighter's purse and that the defendants were not

26  managers as defined by the Ali Act is not enough to definitively demonstrate such prohibited

27

28

                                                12

collusion.[9]  Indeed, deposition testimony from Cruz and one of his managers, Yolfri Sanchez, tend to suggest that there was a separation between the promotion and the management teams working with Cruz—creating an issue of material fact about whether any prohibited collusion occurred between Cruz's managers and the defendants.  And, as discussed earlier, the rights of the parties with respect to the purse are unclear.  I therefore DENY summary judgment on Cruz's first cause of action.[10]

## 2.  The Disclosure Provision

Cruz also seeks summary judgment on his second cause of action pursuant to the Ali Act. In addition to the Firewall Provision, the Ali Act has a Disclosure Provision that provides, in relevant part:

> (b) Disclosures To The Boxer
> A promoter shall not be entitled to receive any compensation directly or indirectly in connection with a boxing match until it provides to the boxer it promotes—
>> (1) The amounts of any compensation or consideration that a promoter has contracted to receive from such match;
>> (2) All fees, charges, and expenses that will be assessed by or through the promoter on the boxer pertaining to the event, including any portion of the boxer's purse that the promoter will receive, and training expenses; and
>> (3) Any reduction in a boxer's purse contrary to a previous agreement between the promoter and the boxer or a purse bid held for the event.

15 U.S.C. § 6307(e)(b).

Cruz alleges, and defendants do not dispute, that Cruz did not receive any disclosure from the NCP defendants or Matchroom about their compensation.  MSJ 7–8.  The NCP defendants contest the premise that they were required to submit any disclosures in the first instance.  Oppo.

---

[9] And, the language discussed below in 15 U.S.C. § 6307(e) suggests that this is a permissible use of a fighter's purse.

[10] In my Prior Order, I held that Cruz's theory that "being paid from his purse inherently gave the NCP defendants a financial incentive in his management . . . given that is precisely why *managers* are paid as portions of boxer's purses" was enough to survive a motion to dismiss.  Prior Order at 7.  Now we are at summary judgment, in which I have reviewed the evidence discussed above that makes the material dispute here clear.

10–11.  In their view, because Matchroom was "primarily responsible for organizing, promoting, and producing" Cruz's matches, it was Matchroom's duty to provide all relevant disclosures.  *Id.* And since NCP was "never the promoter of record," it never needed to make disclosures to Cruz. *Id.*

At the hearing on this motion, parties agreed that this is a matter of first impression. Although defendants cite to a District of New Jersey case, *Main Events Productions, L.L.C. and New Jersey Sports Productions, Inc. v. Lacy and Roes*, which cited to the Ali Act's definition of "Promoter" as "the person primarily responsible for organizing, promoting, and producing a professional boxing match," that case does not address whether the Ali Act contemplates the relationship between co-promoters in delineating Promoter responsibilities.  358 F. Supp. 2d 391, 393 n. 1 (D.N.J. 2004).

Based on the record before me, defendants' position contravenes the plain language and clear intent of the statute.  It reads, importantly, that "*A* promoter shall not be entitled to receive any compensation" without providing the boxer with the appropriate disclosures.  15 U.S.C. § 6307(e) (emphasis added).  Defendants spend a significant time in their papers asserting that they work with Cruz in a promotional capacity.  The Cruz-NCP Agreement defined NCP as Cruz's "exclusive" promoter.  *See* Rodriguez Decl. Exh. A [Dkt. No. 84-2] 6.  The BPA defines defendants as "the Promoter," setting up a clear "co-promoter" relationship between defendants and Matchroom.  BPA 5.  In the NCP defendants' view, without their influence, Cruz would not have developed a relationship with Matchroom in the first instance.  Oppo. 3–5.  In this case, they seek clarity about their "entitle[ment] to receive any compensation directly or indirectly in connection with" Cruz's matches, and even assert that Cruz has been unjustly enriched by *not* compensating them.  15 U.S.C. § 6307(e)(b); FAXC ¶¶ 30–35.  Given all that, they cannot deny

that they are *a* promoter, because of their belief that Matchroom was Cruz's "primary" promoter.[11] Because the uncontroverted facts demonstrate that: (1) the NCP defendants acted as a promoter to Cruz and (2) they failed to make the appropriate disclosures before (3) receiving compensation directly or indirectly in connection with Cruz's boxing matches, I GRANT summary judgment for Cruz on his second cause of action.

That leaves two questions unanswered. Is Matchroom jointly and severally liable as a promoter for failure to disclose? And did Cruz suffer any damages from this failure? *See* 15 U.S.C. §6309(d) (the Enforcement Provision of the Ali Act). Those questions will need to be litigated, either at trial of this case or in arbitration.

### B.    Cal. Bus. & Prof. Code §§ 18628 et seq.

Cruz next seeks summary adjudication for his third cause of action—that defendants violated California state law that requires boxing managers to be licensed by the state. MSJ 8–10. Defendants are not licensed as boxing managers in California. As an initial matter, although New York state contract law governs each of the contractual disputes between the parties, this particular provision of California law is applicable to any professional boxing activities that take place in California. If I were to consider application of New York law on this issue, it would be inappropriate to apply it because New York's "regulation of boxing is less stringent than that of California." *De la Hoya v. Top Rank, Inc.*, 2001 WL 34624886 at *4 (C.D. Cal. Feb. 6, 2001) (citing *Foreman v. George Foreman Assocs., Ltd.*, 517 F.2d 354, 357 (9th Cir. 1975) ("The California courts do not hesitate to invalidate a stipulation of governing law when application of such law would be contrary to the public policy of California.")).

---

[11] Defendants' unsupported arguments that "a promoter is only required to provide an Ali Act disclosure when it is a party to the revenue generated by the event" likewise fail. Oppo. 10. Even if I were to consider the State Bout Agreements submitted by defendants as evidence, they cannot contest that NCP was necessarily compensated at least "indirectly in connection with a boxing match" because the undisputed facts demonstrate that after Cruz's first and second bouts, NCP received compensation. 15 U.S.C. § 6307(e).

United States District Court
Northern District of California

As relevant to Cruz's claim, California Business & Professions Code section 18628 defines a "manager" in part as "any person" who "[r]eceives or is entitled to receive more than 10 percent of the gross purse of any professional boxer or martial arts fighter for any services relating to such person's participation in a professional contest."  Cal. Bus. & Prof. Code § 18628(c).  As defined in the BPA, the purses for each of Cruz's bouts for his first year of fights were as follows: (1) $125,000 for Bout 1, (2) $150,000 for Bout 2, (3) $175,000 for Bout 3, and (4) $200,000 for Bout 4.  BPA § 6.  The BPA states that the amount of each purse is "in each case less applicable deductions," without explicitly defining what those applicable deductions are.  BPA § 6.1.  Cruz consistently refers to his purses in their full amount without contemplating any deductions at all, and defendants unhelpfully argue that because Cruz is an "up and coming fighter," he has not generated any *revenues* that can be factored into his gross purse (as was the case in *de la Hoya*).  Oppo. 12.  If I only consider the purses as defined in the BPA, Cruz alleges that defendants withheld more than 10 percent of each purse for the first and second bouts and that Matchroom Boxing is holding more than 10 percent in escrow for the third and fourth bouts awaiting the outcome of this case.  Defendants do not contest Cruz's exhibit demonstrating payments made by defendants to Cruz.  *See* Smith Decl. Exh. A 99–101.

What remains in dispute are the rights of the parties under the BPA and Cruz-NCP Agreement and the intent behind and validity of the secondary bout agreements signed by Matchroom and Cruz.  *See* Gallegos Decl. Exhs. F & G [Dkt. No. 84-1] 74–79.  At the hearing, the parties explained their differing views about the bout agreements.  Defendants said that the bout agreements support an understanding that Cruz's "gross purse" did not consist of the full amount as explained in the BPA (it was half that amount), and therefore any financial compensation to which they are entitled does not come from Cruz's gross purse.  Cruz's opposing view is that those bout agreements were given to Cruz to sign only moments before he weighed in prior to each bout and that they are invalid.  Because of that, Cruz argues, his "gross purse"

16

consists of what was outlined in the BPA. Since defendants have received, and seek to further

receive, compensation from the "gross purse" as explained in the BPA, Cruz understands

defendants' actions to be in violation of the California Business and Professions Code.

This dispute precludes summary judgment.

### C.    New York State Law Claims

Cruz next seeks summary judgment on each of his four state law claims based on the BPA:

(1) Breach of Contract, (2) Breach of Duty of Good Faith and Fair Dealing; (3) Breach of

Fiduciary Duty; and (4) Conversion.[12] Because each of these claims rise and fall together rooted

in a dispute of material fact, I address them as one.

From the outset of this case, I have pointed to the lack of clarity of the BPA and Cruz-NCP

Agreement, particularly with respect to NCP's compensation. *See* Dkt. No 39 (May 14, 2024

Guidance In Advance of Hearing) ("[I]t is unclear from the promotional agreement and from the

briefing what Cruz's agreement was with NCP and Rodriguez. . . . [The agreement] does not say .

. . whether or how NCP is compensated or what consideration NCP received for assigning its

rights to Matchroom.") at 2. Cruz now explains that defendants' consideration consisted of the

following:

> Defendants obtained security against a loss, they transferred the financial risk of promoting
> Cruz' fights to Matchroom, while obtaining free transportation, tickets, and co-promotional
> branding; essentially having all the non-economic benefits of promoting Cruz, without any
> of the financial risk.

Repl. 9.

In Opposition, defendants respond that "Plaintiff would like the court to believe that

instead of assigning the rights for a portion of the $100,000+ per fight profit, NCP instead decided

to assign those rights in exchange for complimentary tickets and travel, as well as for the

---

[12] Cruz admits that, pursuant to New York contract law, he may either prevail on a breach of
contract claim *or* a breach of duty of good faith and fair dealing claim, but not both. Repl. 9–10.

association of his company with a major boxing promoter." Oppo. 15. They cite to *Nassau County v. New York State Urban Development Corporation* for the proposition that "a remote or indirect benefit to the promisor is insufficient consideration for a contract." 48 Misc. 3d 248, 256 (N.Y. Sup. 2015). There, the trial court held that the New York State Urban Development Corporation ("UDC") and its co-third-party plaintiff, Dormitory Authority of the State of New York ("DASNY"), both public benefit corporations created by a New York statute, lacked valid consideration in a contract between UDC and the County to construct the Nassau County Aquatic Center. *Id.* at 250, 256. The court held that UDC "did not benefit from the agreement nor did the agreement contain any obligations that it was not already required to do by statute." *Id.* at 256.

The Supreme Court of the Appellate Division reversed. It held that "even assuming that UDC did not receive anything of value for its role in the project, this does not establish, as a matter of law, that the County-UDC Agreement is invalid for lack of consideration." *Nassau County v. New York State Urban Development Corp.*, 157 A.D. 3d 805, 807 (2018) ("*Nassau County* II"). The court continued:

> Consideration consists of either a benefit to the promisor or a detriment to the promisee. It is enough that something is promised, done, forbone, or suffered by the party to whom the promise is made as consideration for the promise made to him [or her]. The detriment suffered or the thing promised need not benefit the promise or a third party, or be of substantial value to anyone.

*Id.* at 807–808 (alteration in original) (internal quotation marks and citation omitted).

Cruz cites to the Appellate Division case to support his view that the minimal benefits offered to defendants in the BPA ("free transportation, tickets, and co-promotional branding") as well as the benefits of co-promoting generally ("security against a loss, . . . transfer[ of] the financial risk of promoting Cruz' fights to Matchroom") constitutes adequate consideration in this case. Repl. 9. But there is a key distinction. In that case, "the County-UDC Agreement bears all the hallmarks of a negotiated agreement. It makes clear that the County bears no responsibility for any portion of a cost overrun . . . and it requires UDC to refund any overpayment of a cost

18

overrun." *Nassau County* II at 808.  Here, it is very unclear what the rights of the parties are with respect to compensation.

"Under New York law, whether a binding agreement exists is generally a legal question for the court to decide.  Where the parties' intention to form a contract is discernible by written agreements alone, the question is one of law, appropriately decided on a motion for summary judgment.  A factual question arises when the parties' intent cannot be conclusively determined as a matter of law from the terms of the agreement itself."  *Alessi Equipment, Inc. v. American Piledriving Equipment, Inc.*, 578 F. Supp. 3d 467, 486–87 (S.D.N.Y. 2022) (internal quotation marks and citations omitted).  Based on the facts presented by the parties, I cannot conclusively determine the parties' intent.  Because I cannot do so, I DENY summary judgment for each of Cruz's New York state contract causes of action.

### D.    California Penal Code § 496

Cruz asserts that defendants are in violation of California Penal Code section 496, which criminalizes the knowing and intentional receipt of stolen property.  MSJ 15–16.  Because the statute allows for a civil remedy, Cruz seeks to establish criminal intent "beyond mere proof of nonperformance or actual falsity."  *Siry Investment, L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 361 (2022).  Cruz does not come close to making an adequate showing of criminal intent.  At best, he has demonstrated either a misunderstanding or a profound lack of contracting skills between the sophisticated parties in this case.  I DENY Cruz's request for summary judgment on this cause of action.

### E.    Declaratory Relief

Cruz finally seeks summary judgment for his cause of action seeking declaratory relief. He wants me to declare that defendants "are not entitled to any involvement in Cruz' career moving forward [and that] [a]ll money held by Matchroom should be paid to Cruz."  MSJ 15–16. Because of the disputes of material fact that are integral to the claims in this case, I decline to

19

grant Cruz summary judgment on this cause.[13]

### III. NCP's First Amended Cross-Complaint

Cruz additionally seeks summary adjudication on each claim asserted in defendants' FAXC. MSJ 12–13. For reasons related to those I have already explained, I DENY Cruz's motion for summary judgment on those grounds.

### A.    Breach of Covenant of Good Faith and Fair Dealing

Defendants' first cause of action alleges that NCP "has done all of the things required by the [BPA]." FAXC ¶ 27. Yet, "Cruz has instructed Matchroom not to pay NCP any monies owed pursuant to the [BPA] and has insisted that NCP be denied any involvement in his boxing career." FAXC ¶ 28. They contend that this is in contravention of the contract and "interfere[s] with NCP's rights to receive the benefits of the [BPA] by refusing to pay NCP any monies, thereby depriving NCP of receiving payment from Matchroom and collecting a fee from each payment." FAXC ¶ 28. Cruz asserts that because, in his view, NCP did *not* perform under the BPA and now seeks to receive a benefit (financial compensation) far outside the scope of the contract, I must grant summary judgment in his favor on this cause of action. As I explained above, the rights of the parties with respect to compensation are very much in dispute. I DENY Cruz's motion on this claim.

### B.    Unjust Enrichment

Defendants seek relief for the second cause of action in the FAXC because while "Cruz has been unjustly enriched and received the benefit of the Agreement by fighting for Matchroom and receiving lucrative purses, NCP, has not received, nor will receive the benefit of the Agreement and its efforts as Cruz has instructed Matchroom not to pay NCP." FAXC ¶ 33. Again, this cause of action is based on defendants' understanding that the intent of the BPA was for them to provide a service (sharing co-promoter status and conferring Cruz's boxing rights to

---

[13] In Reply, Cruz boldly states that because defendants did not contest that Cruz should be paid the money held by Matchroom in escrow awaiting the conclusion of this case, they have forfeited the issue. Repl. 12. Because defendants' opposition to the motion consistently refutes the idea that any of the funds withheld from Cruz (either by defendants or Matchroom) should be given to him, I disagree.

1   Matchroom Boxing) in return for financial compensation.  The truth behind the parties' intent

2   remains in dispute.  I DENY Cruz's motion for defendants' second cause of action.

3                              **C.      Declaratory Relief**

4          I DENY Cruz's motion for summary judgment on this final cause of action in the FAXC

5   for the same reasons that I denied summary judgment for declaratory relief in the TAC.

6                                   **CONCLUSION**

7          The parties would be wise to recognize the flaws in the written agreements and to resolve

8   them through further negotiation rather than risk the all-or-nothing likely results at trial.  For the

9   reasons explained above, the motion for summary judgment is GRANTED in part as it concerns

10  defendants' violation of the disclosure provision of the Ali Act and DENIED for all other causes

11  of action.

12         **IT IS SO ORDERED.**

13  Dated: June 23, 2025

14

15

16                                          _____
                                            William H. Orrick
17                                          United States District Judge

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California