Gregory M. Smith, Esq. - **CSBN 259971**
Patrick M. Maloney, Esq. - **CSBN 197844**
**THE MALONEY FIRM, APC**
2381 Rosecrans Avenue, Suite 405
El Segundo, California 90245
T: (310) 540-1505 │ F: (310) 540-1507
E: gsmith@maloneyfirm.com
E: pmaloney@maloneyfirm.com

Attorneys for Plaintiff,
ANDY CRUZ GOMEZ

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDY CRUZ GOMEZ,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>NEW CHAMPION PROMOTIONS, LLC; JESSE RODRIGUEZ; MATCHROOM BOXING USA, LLC; AND DOES 1-25,<br><br>　　　　Defendants,<br><br>And related Cross-Actions | Case No.: 3:23-cv-06608-WHO<br><br>**PLAINTIFF'S TRIAL BRIEF** |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD,** per the Court's Minute Order, issued on August 11, 2025, Plaintiff Andy Cruz Gomez ("Cruz") hereby submits this Trial Brief. Consistent with the Court's Order, Cruz does not use this brief to plow the same ground as the prior briefing, including the issues raised in his Motion for Summary Judgment. Instead, Cruz focuses this brief on matters raised by the Court in its August 11, 2025 comments related to the promotional contracts, especially because these agreements are governed by the laws of foreign jurisdictions that might not be familiar to this Court. Cruz'

compliance with the Court's guidance should not be read as a waiver of the previously stated arguments or supporting law.

## I. THE PROMOTIONAL AGREEMENTS

On November 8, 2022, Cruz and NCP signed a promotional agreement entitled Acuerdo Promocional Exclusivo ("APE")[1]  See, Stipulated Fact No. 6; Document 103.

The APE states, in relevant part:

- That it is governed by Florida Law (APE; Sect. XX(b));
- That it "may not be altered, amended or discharged" except in writing, signed by the parties (APE; Sect. XXVIII); and
- That no party "may assign any of their respective obligations hereunder without the consent of the other" (APE; Sect. X).

Effective May 4, 2023, Cruz, NCP, and Matchroom Boxing USA, LLC ("MB" or "Matchroom") executed a contract called Boxing Promotional Agreement ("BPA").  See, Stipulated Fact No. 7; Document 103.

The BPA states, in relevant part:

- That Cruz, NCP, and Matchroom are the "Parties" thereto (BPA; Page One, Sect. Unnumbered);
- That it "shall supersede and replace any prior agreement or understanding (whether written or oral) between the Parties" (BPA; Page One, Sect. Unnumbered);
- That it "contains the entire agreement and understanding of the Parties relating to the subject matter of this Agreement and extinguishes all previous agreements, promises, assurances, warranties, representations, and understandings between the Parties, whether written or oral" (BPA; Sect. 22.1);
- That it is governed by New York Law (BPA; Sect. 26); and

---

[1] The Parties executed versions in both English and Spanish.  Plaintiff used the Spanish name for the document in the Complaint and this convention has continued hereafter.

- That "no amendment to [the BPA] shall be valid unless in writing and signed by both (sic) Matchroom, [NCP], and [Cruz]" (BPA; Sect 19.3).

Since signing the BPA, there have been no amendments or modifications thereto. See, Stipulated Fact No. 10; Document 103.

## II. FLORIDA AND NEW YORK LAW RELATING TO MERGER CLAUSES AND SUBSEQUENT AGREEMENTS

In the State of Florida, "the well established rule of law is that a contract may be discharged or extinguished by merger into a later contract entered into between the parties in respect to the same subject which replaces the original contract." *Aly Handbags, Inc. v. Rosenfeld*, 334 So.2d 124, 126 (Fla. 3d DCA 1976), citing 7 Fla. Jur. Contracts § 166 (1956).

"[A] merger clause is a highly persuasive statement that the parties intended the agreement to be totally integrated." *World-Class Talent Experience, Inc. v. Giordano*, 293 So. 3d 547, 549 (Fla. 4th DCA 2020), review denied, No. SC20-797, 2020 WL 6867221 (Fla. Nov. 23, 2020). "To determine the intent of the parties, a court should consider the language in the contract, the subject matter of the contract, and the object and purpose of the contract." *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 143 So. 3d 881, 891 (Fla. 2014) (quoting *Am. Home Assurance Co. v. Larkin Gen. Hosp., Ltd.*, 593 So.2d 195, 197 (Fla.1992)).

These principles were applied and confirmed by the Federal Court in *Katz v. Fifield Realty Corp.*, 746 F.Supp.2d 1265 (USDC S.D. FL, 2010), which involved an initial and amended agreement for Katz to purchase a condo built by FRC. As the Court explained, "The undisputed record evidence establishes that, in January 2008, the parties executed an Amendment to Purchase Agreement which provided that, upon execution of the 2008 Contract and expiration of the statutory rescission period 'the [2006 Contract] will automatically be deemed terminated.' [DE 151–5, p. 2]. It also is undisputed that Plaintiffs executed the 2008 Contract, and did not exercise their statutory right to rescind that contract. [DE 174, ¶¶ 12–13]. Thus, pursuant the plain language of the Amendment to Purchase Agreement, the 2006 Contract was terminated when the statutory period to rescind the 2008 Contract expired." *Id.* at 1269. The Court when quoted the merger clause from the 2008 (later in time) contract: "This Agreement contains the entire understanding

between Buyer and Seller. **Any current or prior agreements, representations, understandings or oral statements of sales representatives or others, if not expressed in this Agreement, the Condominium Documents or in brochures for the Condominium, are void and have no effect. Buyer agrees that Buyer has not relied on them.**" (emphasis original) *Id.* Finally, the Court concluded that "Because the 2006 Contract was terminated by the parties' Amendment to Purchase Agreement, and replaced by their 2008 Contract, the 2006 Contract" could not be the basis for a cause of action. *Id.* at 1269-1270.

Similarly, under New York law, a "substituted agreement immediately discharge[s]" previous obligations and replaces them with obligations under the new agreement. See *Denburg v. Park Chapin Flattau & Klimpl*, 604 N.Y.S. 2d 900, 906 (1993). Thereafter, a party may not sue for breach of the old agreement. See *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 287 n.1 (2d Cir. 1997) ("[A] substitute agreement extinguishes a claimant's prior claims upon execution of the agreement ...."); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 811 (2d Cir. 1990) (stating that when a new agreement supersedes an older one, "the previous agreement is extinguished, thereby reducing the remedy for breach to a suit on the new agreement").

These principles are well illustrated in *Citigifts, Inc. v. Pechnik*, 112 A.D.2d 832 (1985). In that action, the Court considered two different agreements between the Pechnik and Goldfarb to sell a card and gift shop on Manhattan. *Id.* at 832-833.

In January 1981, Pechnik and Goldfarb signed a contract wherein Goldfarb would buy the business for "for payment of $33,750 at the signing of the contract, to be held in escrow; a check for $103,750 at the closing; and the balance plus interest to be paid under a schedule, $165,000 over a 36-month period, and $597,500 over a succeeding 144-month period. However, in a handwritten rider to the contract, Goldfarb agreed to an additional $200,000 cash payment on or before closing." *Id.* at 833. Closing under the agreement was delayed. In May 1981, Pechnik and Goldfarb executed another agreement, this time by and though Citigifts, Inc., an entity owned by Goldfarb. "The terms of this second contract were substantially the same as the first, except that the schedule of payments was changed and it included the sentence: 'This agreement supersedes any concurrent or previously signed documents.'" *Id.* Thereafter Citigifts, Inc. and Goldfarb brought an action for

breach of the earlier January 1981 agreement. The Court found that the action could not stand on that agreement because, "Simply stated, the contract signed in May constituted a novation of the agreement reached four months earlier. By its terms, the May 4 contract superseded all prior or currently existing agreements between the parties. Such a novation extinguished the old agreement (*Blair & Co. v. Otto V.*, 5 A.D.2d 276, 171 N.Y.S.2d 203), thereby reducing the remedy for breach to a suit on the new agreement (*Northville Industries Corp. v. Fort Neck Oil Terminals Corp.*, 100 A.D.2d 865, 867, 474 N.Y.S.2d 122)." *Id.* at 834.

These rules from *Citigifts, Inc.* were echoed by the United States District Court in *Witek v. City of New York*, No. 12-CV-981(CBA)(VVP), 2018 WL 11691108, at *4 (E.D.N.Y. Mar. 5, 2018), which informs, "Under New York law, a 'substituted agreement immediately discharge[s]' previous obligations and replaces them with obligations under the new agreement. See *Denburg v. Park Chapin Flattau & Klimpl*, 604 N.Y.S. 2d 900, 906 (1993). Thereafter, a party may not sue for breach of the old agreement. See *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 287 n.1 (2d Cir. 1997)."

### III.    APPLICATION OF LAW HERETO

The Court has previously suggested that Florida law might play a role in its determination of the rights of the parties because of its application to the APE. The Court had also suggested that it wasn't certain the BPA actually superseded the APE because of the addition of Matchroom as an additional party to the BPA.

However, the application of the law of both Florida and New York, as set forth above, leads to the conclusion that the BPA is the sole controlling agreement that need be considered and interpreted by the Court.

Both *Aly Handbags, Inc.* and *Katz* specify that under Florida law, Courts will enforce later contracts that supersede prior agreements between the parties on the same subject. Here, there can be no disagreement that the APE was an agreement signed by Cruz and NCP regarding the promotion of Cruz' professional boxing career. The BPA, signed month later by CRUZ and NCP was also a contract regarding the promotion of Cruz' professional boxing career. Accordingly, Florida law supports the conclusions stated in the BPA that it "supersedes", "replaces", and

"extinguishes" all prior agreements between the parties. The fact that the BPA added a signatory does not negate the stated intention of Cruz and NCP that the APE would have no future effect.

New York law also supports this application, both as a matter of contract principles and as a matter of enacting the specified will of the parties that the BPA control their relationship, regardless of what came before it. As for the Court's comment that the BPA might not supersede the APE because the addition of Matchroom as a party, *Citigifts, Inc.* demonstrates that the parties to the to two sequential contracts need not be the same for the later to supersede the former. As explained above, the first *Citigifts, Inc.* agreement was for Goldfarb to personally buy the business from Pechnik, while the later was for Goldfarb's corporation to buy Pechnik's business. Despite this obvious difference in the identity of the parties, the Court held them to the stated term that the second agreement superseded the former and did not allow a suit for breach of the first contact. If this change is signatories was effective to

### IV. CONCLUSION

Cruz appreciated your attention to this matter and looks forward to presenting the rest of his case to the Court.

Dated: August 28, 2025                                      THE MALONEY FIRM LLP

                                                                         By: */s/ Gregory M. Smith*
                                                                         Gregory M. Smith
                                                                         Patrick M. Maloney
                                                                         Attorney for Plaintiff/Cross-Defendant
                                                                         ANDY CRUZ GOMEZ