GEORGE A. GALLEGOS (CA Bar No. 206606)
Law Offices of George A. Gallegos
328 S. Atlantic Blvd., Suite 200
Monterey Park, CA 91754
Telephone: (626) 576-8988
Facsimile:  (626) 576-7070

Attorney for Defendants
New Champion Promotions, LLC and

Jesse Rodriguez

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDY CRUZ GOMEZ,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>NEW CHAMPION PROMOTIONS, LLC, JESSE RODRIGUEZ, MATCHROOM BOXING USA, LLC and DOES 1-50, inclusive,<br><br>　　　　　Defendants.<br>_____<br><br>And Related Cross-Action | Case No.  3:23-cv-06608-WHO<br><br>**DEFENDANT NEW CHAMPION PROMOTIONS, LLC AND JESSE RODRIGUEZ' TRIAL BRIEF** |

**TO THE HONORABLE COURT, PLAINTIFF AND TO HIS ATTORNEYS OF RECORD HEREIN,** Defendants New Champion Promotions LLC and Jesse Rodriguez hereby submit this Trial Brief.

# DISCUSSION

## A. THE BPA DOES NOT SUPERSEDE THE UNDERLYING NCP-CRUZ AGREEMENT.

### 1. The BPA defines the term "Parties" as Matchroom, NCP and Cruz. Therefore, the BPA can only supersede an agreement between all three Parties.

The plain boilerplate language of the BPA confirms that it does not supersede the NCP-Cruz Agreement since the NCP-Cruz Agreement is not an agreement between the "Parties," as defined in the BPA. The BPA defines the "Parties" as Matchroom, NCP and Cruz. BPA pg. 1. Therefore, the language in the Preamble and the superseding clause in Paragraph 22.1, which contain the defined term "Parties" only applies to an agreement between Matchroom, Cruz and NCP. A boilerplate superseding clause is intended to clarify the final terms of the parties involved in that particular contract since contracts involve prior discussions and negotiations. A boilerplate superseding clause is not intended to destroy all other contracts the parties may have between themselves. Since the BPA specifically defines "Parties" as the three parties collectively, it does not supersede the NCP-Cruz agreement which is only between NCP and Cruz.

### 2. The BPA specifically contemplates the NCP-Cruz Agreement remains valid and extends beyond the BPA term.

While there are many differences between the NCP-Cruz Agreement and the BPA, the most significant is the Term of each contract. The NCP-Cruz contract contains a 5-year term, with various term extensions based on Plaintiff's performance. NCP-Cruz Agreement ¶2. The BPA, on the other hand, only has a three-year term. BPA ¶3.

Paragraph 3.3 of the BPA specifically takes into account that the NCP-Cruz Agreement remains valid and exists beyond the BPA. Paragraph 3.3 states:

> "The Parties agree that following the expiry of the Term, the Parties shall have a 30 (thirty) day negotiation period to discuss in good faith extending the Term of this Agreement on terms to be mutually agreed (the "Negotiation Period"). During the Negotiation period, the Promoter/Fighter [NCP/Cruz] shall not discuss or negotiate

with any other promoter. Should the Parties not reach an agreement during the Negotiation Period, **the Promoter/Fighter** shall be free to begin negotiations with any other promoter. (emphasis added)

Clearly, the BPA contemplates the NCP-Cruz Agreement was not superseded by the BPA but rather remains valid and would extend past the BPA Term since it binds NCP to a Negotiation Period wherein it is obligated to negotiate with Matchroom and forbids NCP from talking to any other promoter regarding Plaintiff's promotional rights after the BPA Term expires. Paragraph 3.3 also acknowledges NCP can shop Plaintiff's promotional rights to another promoter after the Negotiation Period. If the NCP-Cruz contract was superseded by the BPA, there would be no need to impose any obligations on NCP after the expiry of the BPA nor would the BPA specifically acknowledge NCP could speak to other promoters about Plaintiff's promotional rights at the end of the Negotiation Period. Rather, Paragraph 3.3 recognizes NCP maintains Plaintiff's promotional rights after the expiry of the BPA via the underlying the NCP-Cruz Agreement.

In the same vein, Paragraph 3.4 contemplates NCP would retain Plaintiff's promotional right after the expiry of the BPA. It states:

> "Following the expiration of the Negotiation Period, should the **Promoter/Fighter** receive an offer, verbal, written or otherwise, for an alternative promotional contract from a third party, within one hundred and twenty (120) days of the end of the Negotiation Period ("Third Party Offer"), the **Promoter/Fighter** shall promptly disclose full details in writing of any such offer to Matchroom, including, but not limited to the proposed term and number of Bouts, the totality of the financial benefit to be derived by the Fighter, and any other relevant ancillary matters in the knowledge of the Promoter, Fighter, the Fighter's Manager or any other party with actual or implied authority to represent the Fighter (the "Third Party Notice"). Before the Fighter accepts a Third Party Offer, Matchroom shall have the right to match any such offer made to the Fighter within ten (10) days of receipt of the Third Party Notice." (emphasis added)

Paragraph 3.4 also recognizes NCP will maintain Plaintiff's promotional rights following the expiry of the BPA as it obligates NCP to disclose any Third Party Offer. If the BPA intended to supersede the NCP-Cruz Agreement, this language would be unnecessary since NCP rights to Plaintiff by the BPA. Rather, the two foregoing paragraphs specifically recognize that NCP would retain Plaintiff's promotional rights after the BPA via the NCP-Cruz Agreement.

B. **NCP's RIGHT TO COMPENSATION**

The BPA lacks any specific payment provision between NCP and Plaintiff. The BPA fails to state NCP's compensation, as well as what amount NCP is required to pay Plaintiff.  In fact, there is no specific provision in the BPA for NCP to pay Plaintiff.  Instead, the only clear payment term in the BPA is between NCP and Matchroom.  The only clear payment term between NCP and Cruz is in the NCP-Cruz Agreement which states NCP shall pay Plaintiff a minimum of $25,000 per fight.  Therefore, as long as NCP and Cruz agree upon a fight purse amount, which is typically memorialized in a separate bout agreement, the two agreements can co-exist without the need to amend either agreement.

In fact, NCP and Cruz had an oral agreement prior to this lawsuit, which did not amend either agreement, but rather addressed how each Matchroom payment would be split between NCP and Cruz so that NCP would receive a promoter fee for the assignment for Cruz' promotion rights and Cruz would receive a payment for his participation in each fight.  NCP and Cruz orally agreed NCP's promoter fee would be 25% and Plaintiff's fight purse would constitute 75% of the Matchroom payment.  Plaintiff now deny this agreement existed, however the previous conduct of the two parties demonstrate otherwise.  More specifically, NCP deducted a Promoter's fee from the signing bonus and the first two bouts without any objection from Team Cruz.  Throughout this period of time, Team Cruz kept in constant contact with NCP but never objected to NCP's fee.  In fact, Cruz' manager, Yolfri Sanchez, refunded NCP a $15,000 overpayment after the first bout, recognizing that NCP was to receive a promoter fee of 25%.  This promoter fee was corroborated by Alexy Ferrer, Cruz' manager as he stated in deposition that NCP repeatedly stated it would take a promoter fee directly from Matchroom.  Plaintiff himself admitted NCP was to be paid from Matchroom.  Cruz and his management team have all testified that NCP never stated it would work for free, yet this is what is now asserted in the lawsuit.

In fact, the plain language of the BPA contemplates that the fee paid to NCP would be split by NCP and Cruz. For example, Paragraph 5 **The Signing Bonus** states " The Signing Bonus shall be released to **Promoter/Fighter**" (emphasis added). Nothing in the plain language of this paragraph states the signing bonus was intended to be paid in entirety to Plaintiff.

Similarly, the payment provision in the BPA, Paragraph 8.2 states "All Purses referred to under this Agreement shall by payable by Matchroom **to the Promoter, and as directed by the Promoter, to Fighter** within five (5) days…" (emphasis added). Again, this payment provision is structured in a manner that contemplates a split of the fee paid by Matchroom whereby NCP would receive a portion of the fee and then direct Matchroom to pay Plaintiff's portion to a different account. In fact, Matchroom's Director and CEO, Frank Smith unequivocally stated in deposition that Matchroom's payment is made to NCP "because the promoter [NCP] was holding the promotional rights with the fighter [Cruz] and [NCP] would share the split between the promoter and the fighter."

## C. THE BPA IS VOID FOR LACK OF CONSIDERATION.

If there is no monetary compensation for NCP in the BPA, the contract is void for lack of consideration. Cruz' argument that consideration was provided to NCP in the form of a transfer of financial risk is misplaced. Cruz asserts NCP received the benefit of avoiding the financial costs of putting on an event that would feature Plaintiff. The NCP-Cruz agreement, however, does not require NCP to put on an event and take on these financial risks. Rather, the NCP-Cruz agreement simply requires NCP to offer Cruz "the right to participate in no fewer than three boxing matches per year" and to pay him purses to be mutually negotiated and agreed upon, but no less than $25,000 per bout. NCP-Cruz Agreement ¶ III and IV(a). In other words, NCP could offer Cruz the opportunity to fight on another promoter's event, which is a common practice for regional promoters. Moreover, Plaintiff has no evidence that NCP would be unable to stage an event, find a

co-promoter or had any concern about losing money such that it earned a benefit by being relieved of this obligation. A promoter is in the business of assuming risks and to assert that being relieved of this part of the business constitutes consideration is non-sensical.

Plaintiff also asserts the BPA provided consideration to NCP in the form of complimentary tickets and travel to each of Plaintiff's fights. The actual language of the BPA, however, clearly states that such "benefits" belong to Plaintiff. For example, Paragraph 10.1(a)(1) states that "Matchroom shall make available at Promoter/Fighter's request for **use by the Fighter and his trainers** up to five (5) hotel rooms…" emphasis added). Therefore, the BPA does not provide travel accommodations to NCP, nor is there any evidence that Plaintiff provided any of his 5 hotels to NCP.

Similarly, Paragraph 10.1 (b) (i) states "…**Fighter shall be entitled** to receive free of charge four (4) P1, four (4) P2 and four (4) P3 tickets for each bout." (emphasis added). While Plaintiff has continually stated NCP received free tickets and travel as consideration for the assignment, the BPA makes clear that such "perks" belong solely to Plaintiff.

Finally, it is well-established that Plaintiff's references to co-branding, tickets and travel accommodation are standard terms, which are included in all fight agreements. In fact, NCP did not negotiate the co-branding, ticket allocation or travel accommodation contained in the Matchroom Agreement since such terms are standard in all boxing agreements.

Therefore, if the BPA does not provide any money compensation to NCP, the BPA lacks consideration and should be declared void.

## **CONCLUSION**

Defendants NCP and Rodriguez respectfully submit this brief to the Court.

Dated: August 28, 2025

By:____/s/_____
George A. Gallegos
Attorney for Defendants
New Champion Promotions,
LLC and Jesse Rodriguez