GEORGE A. GALLEGOS (CA Bar No. 206606)
Law Offices of George A. Gallegos
328 S. Atlantic Blvd., Suite 200
Monterey Park, CA 91754
Telephone: (626) 576-8988
Facsimile:  (626) 576-7070

Attorney for Defendants
New Champion Promotions, LLC and
Jesse Rodriguez

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDY CRUZ GOMEZ,<br><br>    Plaintiff,<br><br>  vs.<br><br>NEW CHAMPION PROMOTIONS, LLC, JESSE RODRIGUEZ, MATCHROOM BOXING USA, LLC and DOES 1-50, inclusive,<br><br>    Defendants.<br>_____<br><br>And Related Cross-Action | Case No.  3:23-cv-06608-WHO<br><br>**[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

**TO THE HONORABLE COURT, PLAINTIFF AND TO HIS ATTORNEYS OF RECORD HEREIN,** Defendants New Champion Promotions LLC hereby submit its Findings of Fact and Conclusions of Law.

# I. FINDINGS OF FACT

## A. The Parties

1. Plaintiff Andy Cruz ("Cruz") is a professional boxer.

2. Defendant New Champion Promotions ("NCP") is a Nevada Limited Liability Company that operates as a boxing promotion company and is licensed by the State of Florida. Trial Exhibit 9, Stipulated Facts, ¶ 4.

3. Defendant Matchroom is a business entity and one of the largest boxing promotion companies. Id. ¶ 8.

## B. Plaintiff Assigned His Boxing Promotional Rights to Defendant NCP.

4. On November 7, 2022, Defendant Jesse Rodriguez, on behalf of NCP, provided Cruz with a draft of a promotional agreement for his review in Spanish. Trial Tr. Vol. 4, 369:23-25; 370:11-20 (Rodriguez).

5. On November 8, 2022, Rodriguez met with Cruz and his wife and explained the terms of the NCP promotional agreement, answered their questions, went over the agreement with Cruz page by page, explained the commercial terms, the length of the contract and minimum purses. Rodriguez also explained to Cruz he would make Cruz a signatory to any subsequent co-promotion agreement if he assigned Cruz' promotional rights to a major promoter. Id. at 372:21-374:6; 376:23-377:11; 379:16-380:9 (Rodriguez).

6. After Rodriguez explained each page, Cruz initialed the bottom right-hand corner of each page and signed the NCP promotional agreement entitled Acuerdo Promocional Exclusivo ("NCP-Cruz Agreement"). Id. at 377:12-378:25; (Rodriguez); Trial Ex. 101, Trial Ex. 9, Stipulated Facts paragraph 6.

7. The NCP-Cruz Agreement provided, among other things, that Plaintiff Cruz assigned NCP his exclusive boxing promotional rights for five (5) years, subject to extensions, in exchange for NCP's promise to provide Cruz the opportunity to participate in three (3) fights per year with a minimum purse of $25,000. Trial Ex. 101-001-0013, ¶¶ I- IV.

8. The NCP-Cruz Agreement also provided NCP the right to assign any of Cruz' rights. Trial Ex. 101-004 ¶X.

### C. NCP Assigns Cruz' Promotional Rights to Matchroom.

9. Effective May 4, 2023, Cruz, NCP and Matchroom Boxing USA, LLC executed a contract called Boxing Promotion Agreement ("BPA"). Trial Ex. 9, Stipulated Facts ¶ 7; Trial Ex. 2.

10. The BPA is structured as an agreement between Matchroom and NCP for the professional services of Cruz. Trial Ex. 2; Trial Tr. Vol. 3, 306:18-20 (Orrick).

11. The payment structure in a provision of services agreement is the lead promoter agrees to pay certain fees to the original promoter who then pays his fighter a certain amount for that bout. The payment from the acquiring promoter is a package of both the original promoter fee and the fighter's purse for the bout. Trial Tr. Vol. 4, 529:13-530:16 (Bash).

12. The only way a promoter who assigns its promotional rights to a fighter to another promoter is to agree to a certain amount of money and then to split that money for a promoter fee and a fighter purse. Id. at 543:19-544:10.

### D. The Parties' Intentions.

13. Frank Smith is the CEO of Matchroom who negotiated the commercial terms of the BPA. Trial Tr. Vol. 3, 261:13-21 (Smith).

14. Matchroom intent in executing the BPA was to be assigned the promotional rights owned by NCP. Trial Tr. Vol. 3, 305:12- 307:13 (Smith).

15. Matchroom payment to NCP was intended to pay NCP for the promotional rights it owned and then NCP would have a separate agreement with Cruz regarding its promoter fee and Cruz' purse. Id. at 268:3-7; 305:12- 307:13.

16. Matchroom's payments to NCP was a fee for NCP promotional rights and Cruz' purse. Matchroom believed the term purse was a title renumeration for

the delivery of the services of the fighter and the promotional rights that were assigned to Matchroom. Id. at 292:22-293:9.

17. Matchroom did not intend for the Signing Bonus to be 100% paid to Cruz but rather believe it would be split between Cruz and NCP. Id. at 297:5-10.

18. Cruz understood and agreed that if NCP assigned his promotional rights to a major promoter, NCP would be compensated by the major promoter. Trial Tr. Vol. 2, 239:18-24 (Cruz); Trial Tr. Vol. 3, 336:24-337:4; 337:24-338:19 (Cruz).

19. NCP believed, and informed Cruz, it would be entitled to 25% of the fee paid by Matchroom per Bout under the BPA for its assignment of Cruz' promotional rights. Trial Tr. Vol. 4, 398:24-399:12; 406:10-22 (Rodriguez).

**E.    The BPA Terms.**

20. The BPA required, among other things, that Matchroom pay a signing bonus and bout purses to NCP. Ex. 9, Stipulated Facts ¶ 11. Specifically, Sections 5.1 and 6.1 of the BPA required Matchroom to pay a total signing bonus of $250,000 and $125,000, $150,000, $175,000 and $200,00 for Cruz' first four bouts, respectively. Id. at ¶ 12.

21. Paragraph 5.1 of the BPA states the "Signing Bonus shall be released to the Promoter/Fighter…." Trial Ex. 2-004.

22. The term "Purse" is defined as the fee owed to the Fighter for participating in a Bout. Trial Ex. 2-002.

23. Paragraph 8.2 of the BPA states all Purses shall be payable "by Matchroom to the Promoter and as directed by the Promoter, to Fighter…" Trial Ex. 2-006.

24. Paragraph 10.1(a)(1) states that "Matchroom shall make available at Promoter/Fighter's request for use by the Fighter and his trainers up to five (5) hotel rooms…" Trial Ex. 2-006.

25. Paragraph 10.1 (b) (i) states "…Fighter shall be entitled to receive free of charge four (4) P1, four (4) P2 and four (4) P3 tickets for each bout." Trial Ex. 2-006.

26. The fight tickets, travel, accommodations and co-branding privileges in the BPA are standard terms in any Matchroom agreement. Trial Tr. Vol. 3, 300:13- 301:15 (Smith).

27. NCP did not receive any offer of consideration, separate and apart from the Matchroom Agreement for the assignment of Plaintiff's rights. Trial Tr. Vol. 3, 263:15-23 (Smith).

**F.     The Parties' Conduct.**

28. In 2023, Matchroom paid NCP a total of $430,750, for a signing bonus and Bouts 1 and 2 under the BPA. Ex. 9, Stipulated Facts paragraph 13.

29. Of the $430,750 paid by Matchroom, NCP paid Cruz' manager directly $283.470. NCP paid another $81,140 to Cruz' manager and attorney Pat English that it argues should be treated as payments to Cruz. Id. at ¶ 14.

30. Cruz' manager, Yolfri Sanchez was in charge of keeping track of all payments from NCP to Cruz. Trial Tr. Vol. 3, 325:3- 17 (Cruz); Trial Tr. Vol. 1, 124;16-23 (Sanchez); Trial Tr. Vol. 2, 164:1-6 (Sanchez).

31. Cruz had his manager first verify each document he received relating to his boxing career, the manager explains it to him, advises him and then he signs each document. Trial Tr. Vol. 3, 347:3- 348:18 (Cruz).

   a.     **The First Bonus Payment**

32. From the $125,000 initial Signing Bonus payment from Matchroom, NCP paid Cruz' manager approximately 75% ($94,000) as Cruz' share and reminded Cruz' manager of NCP's 25% percentage fee when he disbursed it. Trial Ex. 5-001. Trial Tr. Vol. 1, 120:7-9; 121;9-21; 122:5-24 (Sanchez); Trial Ex. 107-006-007.

33. Cruz' manager made no objection to this payment or NCP's promoter fee. Id. at 122:19-123:6 (Sanchez).

34. Cruz claims payment was made to NCP under the BPA because he did not have a U.S. bank account but all payments from NCP were made to Cruz' manager's U.S. Chase Bank account. Trial Tr. Vol. 1, 104:4-106:21(Sanchez).

### b. **Plaintiff Cruz' Bouts Under the Matchroom Agreement.**

35. With regard to the first four pre-agreed Purses, Matchroom understood that it agreed to pay a purse for each fight that Cruz and NCP would have their own agreement as to how to split between themselves. Trial Tr. Vol. 3, 267:24-268:7 (Smith).

### c. **Cruz' First Bout.**

36. The Purse for Cruz' first bout under the BPA was $125,000. Trial Ex. 2-005 ¶6.1(a)(i).

37. Cruz' first bout under the BPA occurred on July 15, 2023, against Juan Carlos Burgos in Detroit, Michigan. Matchroom did not pay $125,000. Instead, pursuant to the Matchroom Bout Agreement, Cruz' agreed upon official purse for this bout was $62,000. Trial Ex. 102, ¶ 2.1

38. Pursuant to Matchroom Bout Agreement, $62,000 was the entire payment for Cruz' first bout and no further financial obligation was owed to Cruz, either directly or indirectly for the Bout. Id. at ¶ 2.2.

39. Cruz understood the document as a contract for his first bout, reviewed it and executed the contract. Trial Tr. Vol. 3, 345:12-346:17 (Cruz).

40. Matchroom paid NCP the Purse and the second portion of the bonus after Cruz' first bout. NCP provided Cruz' manager with an accounting that included its promoter's fee and initially sent Cruz' manager $96,100. NCP realized it did not take into account the taxes withdrawn and overpaid Cruz $15,350 and requested a payment from Cruz' manager for the overpayment. Trial Ex. 107-014-018.

41. Cruz' manager did not object to NCP's promoter fee and instead agreed to the accounting and paid the $15,250 overpayment. Trial Ex 07-022; 109-001-4; Trial Tr. Vol. 1, 133:24-134:1; 134:2-6; 134:19-24; 135:14-21 (Sanchez).

### d. Cruz' Second Bout

42. The Purse for Cruz' first bout under the BPA was $150,000. Trial Ex. 2-005 ¶6.1(a)(ii).

43. Cruz' second bout under the BPA occurred on December 9, 2023, against Jovanni Straffon in San Francisco, CA. Matchroom did not pay Cruz $150,000, instead, pursuant to the California State Bout Agreement, Cruz' agreed upon official purse for this bout was $75,000. Trial Ex. 105-001, ¶ 2.

44. The California Bout Agreement specifically states the $75,000 purse "represents full payment for Contestant's performance pursuant to this Bout Contract." Id.

45. Cruz demanded that Matchroom pay Cruz the full amount of the BPA Purse amount for Bout 2, however, Matchroom did not do so. Trial Tr. Vol. 2, 144:17-22 (Sanchez).

46. Instead for the second fight, Matchroom paid $75,000 directly to Cruz, per the state bout agreement. Id. at 145:24-146:2 (Sanchez).

### e. Cruz' Subsequent Bouts.

47. After Cruz' second bout, Cruz became worried that NCP was not paying him in full. Cruz initiated this lawsuit and instructed Matchroom not to pay any monies to NCP. Trial Ex. 9, Stipulated Facts ¶ 20.

48. Matchroom has only paid Cruz 75% of the contracted purse amount. Id. at ¶ 21.

## G. The BPA's Superseding Clause.

49. The BPA clearly defines the "Parties" as Matchroom, NCP and Cruz. Trial Ex. 2-001.

50. The superseding clause in paragraph 22.1 of the BPA contains the

defined term "Parties" so only applies to any agreement between Matchroom, Cruz and NCP. Id. at 2-015.

51. Matchroom has no other contract with New Champion regarding Andy Cruz. Trial Tr. Vol. 3, 260:1-4 (Smith).

52. The NCP-Cruz contract contains a 5 year term, with various term extensions based on Plaintiff's performance. Trial Ex. 101, ¶2. The BPA, on the other hand, only has a three-year term. Trial Ex. 002-003 ¶3.

53. Paragraph 3.3 of the BPA specifically binds NCP to a Negotiation Period wherein it is obligated to negotiate with Matchroom and forbids NCP from talking to any other promoter after the term expires. Paragraph 3.3 also specifically recognizes that both NCP and Cruz can seek another promoter after the Negotiation Period. Id. Trial Tr. Vol. 3, 303:13-304:9 (Smith).

54. Paragraph 3.4 recognizes that Promoter NCP will maintain Plaintiff's promotional rights following the expiry of the BPA and therefore obligates NCP to disclose any Third Party Offer. Id.

## II.   CONCLUSIONS OF LAW

1.   The BPA Lacks Consideration. In order for a contract to be binding and enforceable, there must be valid consideration. *Nassau County v. New York State Urban Dev. Corp.*, 48 Misc. 3d 248, 254, 4 N.Y. S. d 874, 879 (quoting *Umscheid v Simnacher*, 106 AD2d 380, 482, NYS2d 295 [2d Dept 1984]). HN2 ). "Consideration may take the form of either a promise or performance, [and] has been said to consist of what is actually given or suffered and accepted for a promise. It is, in effect, the price bargained and paid for a promise" *Id.* (quoting 22 NY Jur 2d, Contracts § 75). "The essence of consideration is a legal detriment that has been bargained for and exchanged for the promise. In short, the detriment must induce the promise" *Id.* " A remote or indirect benefit to the promisor is insufficient consideration for a contract. *Id.* at 256. In interpreting a contract, the intent of the

parties governs. A contract should be construed so as to give full meaning and effect to all of its provisions. *Id.* at 263.

If the term "Purse" is deemed to mean Cruz' sole fee for his participation in each bout, there is no consideration, i.e. promotional rights fee, paid by Matchroom to NCP as consideration for the assignment of Cruz' rights.

2. Mistake of law. "The remedy of rescission may be granted where, as here, a mistake existed at the time the contract was entered into if 'the mistake is so material that.. it goes to the foundation of the agreement." *K.A.M.M. Group, LLC v. 161 Lafayetter Realty, Inc.* 153 A.D. 3d 799, 60 N.Y.S.3d 378, 379 (2d Dept. 2017). The intent of the Parties, as well as their respective conduct, demonstrate the term Purse was to be fee paid to NCP which was to include a promoter's fee and Cruz' purse. Since this mistake goes to the underlying basis of the assignment by NCP, i.e. payment for its assignment, and is material, recission is proper.

3. Waiver. Waiver is an intentional relinquishment of a known right and should be not be lightly presumed. *Gilbert Frank Corp. v. Federal Ins. Co.,* 70 NY2d 966, 968, 525 NYS2d 793 (1988). Plaintiff Cruz waived his right to any entitled to the 1st and 2nd fight Purses as a result of his execution of the respective bout agreements for each fight.

### III.   CONCLUSION

Based on the foregoing, Defendants NCP and Rodriguez request the Court void the BPA for lack of consideration and/or mistake of fact.

Respectfully submitted,

Dated: September 29, 2025

By:____/s/_____
George A. Gallegos
Attorney for Defendants
New Champion Promotions,
LLC and Jesse Rodriguez

LAW OFFICES OF
GEORGE A.
GALLEGOS

9