UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDY CRUZ GOMEZ,

       Plaintiff,

   v.

NEW CHAMPION PROMOTIONS, LLC, et al.,

       Defendants.

Case No. 23-cv-06608-WHO

**ORDER ON THE MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 144

Before me is defendants New Champion Promotions' ("NCP") and Jesse Rodriguez's ("Rodriguez") (together, "defendants") motion for summary judgment concerning the four remaining causes of action in plaintiff Andy Cruz Gomez's ("Cruz's") Third Amended Complaint ("TAC"). The motion is rife with facts framed as "undisputed" that remain in dispute or run counter to facts I have already found and conclusions I have already made following the bench trial in this case. I will GRANT the motion with respect to the third cause of action, which is now moot because of my previous findings, and DENY it for the sixth, seventh, and eighth causes of action. The case shall proceed to trial with those latter causes of action along with the second cause of action for quantum meruit alleged in defendants' first amended cross-complaint ("FAXC"). [1]

## BACKGROUND

The parties are familiar with the facts of this case. A more complete factual background can be found in my previous orders. *See* Order on Cruz's Motion for Summary Judgment [Dkt. No. 94]; Findings of Fact and Conclusions of Law Regarding Claims for Declaratory Relief

---

[1] Although that cause of action is styled as Unjust Enrichment, Dkt. No. 73 at 7, I have previously construed the claim to be one of quantum meruit. *See* Dkt. No. 136 at 21–23.

("Findings of Fact" or "Conclusions of Law") [Dkt. No. 136]; and the Order Reconsidering and Denying Cruz's Motion for Summary Adjudication [Dkt. No. 141].

### I.    Disputed Facts

In support of their motion for summary judgment, defendants present nine facts that they assert are "undisputed."  Motion for Summary Judgment ("MSJ") [Dkt. No. 144] at 5–6.[2]  Many of those "undisputed" facts are either in dispute or contrary to the Findings of Fact I made following the bench trial in this case.

To start, the Findings of Fact are final unless or until a party successfully moves to amend them or they are clearly erroneous and sets them aside.  Fed. R. Civ. P. 52 (a)(5), (6), (b).  Otherwise, parties are bound by them.  No party has moved to amend them.  Counsel for defendants may not simply reframe the found facts to their liking with successfully moving to amend.

Cruz disputes six of defendants' asserted "undisputed facts."  Opposition to the MSJ ("Oppo.") [Dkt. No. 145] at 4–8.  He is right to do so.

First, defendants state that: "On May 4, 2023, NCP and Defendant Matchroom Boxing USA, LLC ("Matchroom") executed a boxing co-promotion agreement whereby NCP assigned Matchroom the right to promote Plaintiff Cruz'[s] boxing bouts in exchange for the payment to NCP of a fee for the assignment of Plaintiff's promotional rights for each bout (the "BPA")."  MSJ 5.  Defendants cite a January 21 declaration[3] signed by Rodriguez to support this "undisputed" fact.  It is undisputed that the BPA became effective on May 4, 2023, and that Matchroom obtained the assignment of NCP's promotional rights for Cruz for a three-year term at the time of signing.  Findings of Fact 58, 60.  But whether those rights were assigned to Matchroom "in exchange for the payment to NCP of a fee . . . for each bout" goes to the heart of what has made this case so needlessly complicated.  MSJ 5.  After the bench trial, I concluded that "there is no provision in the BPA specifying how NCP is to be compensated for any services for

---

[2] The page numbers referenced herein refer to the page number of the docket entry, as opposed to the page numbers on the bottom of the submitted briefs.

[3] Presumably from 2026; the declaration is undated.

its assignment of the promoters' rights. Rodriguez never requested a finder's fee or payment from Matchroom for bringing Cruz to Matchroom." Findings of Fact 70. Defendants do not point to any undisputed evidence that would require a revision to that finding.

Second, defendants state that: "Matchroom Director and CEO, Frank Smith, confirmed the payment from Matchroom to NCP of Plaintiff's bouts was because NCP held the promotional rights to Cruz and NCP would then divide the fee paid by Matchroom between itself and the fighter." MSJ 5. Defendants cite portions of Frank Smith's April 9, 2025, deposition in support of this "undisputed" fact. *See* Smith Depo., MSJ Exh. B [Dkt. No. 144-2] 10–11 ("Q: Do you have an understanding as to why Section 8.2 [of the BPA] required Matchroom to pay [NCP] instead of the fighter directly? A: Because [NCP] was holding the promotional rights with the fighter and would share the split between [NCP] and the fighter. . . . Q: Was there anything unusual about in this agreement [sic] New Champion receiving the payment? Was that unusual for a co-promotional agreement? A: No. The payment could be split as determined by [NCP] and the fighter, as well. Q: That would be typical in your experience. Correct? A: Yeah."). The framing of this fact is disingenuous. Whether the CEO of Matchroom believed funds flowing from Matchroom to NCP resulted from a predetermined contractual relationship between NCP and Cruz shines no light upon what NCP and Cruz understood the purpose of that process to be.

The Findings of Fact make clear that NCP and Cruz had different understandings of why NCP was the sole recipient of Cruz's funds from Matchroom. *See* Findings of Fact 64 ("NCP received funds on Cruz's behalf pursuant to the BPA. There is disagreement on why that is the case. Cruz and his managers claim that payment was made from Matchroom to NCP under the BPA because Cruz did not have a U.S. bank account at that time. Rodriguez stated that Cruz's lack of U.S. bank account is not the reason the money was sent directly to NCP.").

Third, defendants state: "At no time did Rodriguez receive any payment, in his individual capacity, from Matchroom for Plaintiff's bouts." MSJ 5. Again, defendants cite Rodriguez's recently drafted and submitted declaration in support. *See* Rodriguez Decl. [Dkt. No. 144-1] ¶ 4 ("Rather, all Matchroom payments pursuant to the BPA were made to a [sic] NCP bank account."). To the extent that this "undisputed" fact is about whether Rodriguez had exclusive

United States District Court
Northern District of California

control over any funds from Matchroom stemming from Cruz's bouts, the framing of the fact is, again, disingenuous at best. It might be undisputed that the funds went to an NCP bank account, but it is also undisputed that Rodriguez is the President and sole employee of NCP. Findings of Fact 20. He had access to NCP's bank accounts. Whether he used those bank accounts outside the scope of his role as NCP's president was an issue contested during the bench trial and on which I did not make any findings of fact. *See, e.g.*, Trial Transcript 490:20-24 ("Q: [T]hat's a payment from New Champion Promotions to a dentist; correct? A (Rodriguez): Yes. Q: Was that for your dental work? A: That was for my dental work."); Trial Transcript 501:7-19 ("Q: As far as you're concerned, there's no distinction between New Champion Promotions' account, your accounts, and the accounts of your other businesses; when money is necessary, you make sure it gets moved? A (Rodriguez): . . . I do know the difference between one account and the other, and I treat it very carefully. That's why I treat every deposit I make into New Champion Promotion, I either treat it as a sponsorship from one of my companies or as a loan from one of the companies. And I mean from sponsorship because there are fights that my other copromoters go in and they wear the logo of one of my companies."). This fact remains in dispute.

Defendants' fourth stated fact in dispute is: "Cruz's second bout occurred on December 9, 2023, against Jovanni Straffon in San Francisco, California. Cruz's official purse for this bout was $75,000, which explicitly 'represented full payment for Contestant's performance.'" MSJ 5. Defendants cite the state bout agreement signed by Matchroom and Cruz, which contains the quoted language. September 2023 Bout Agreement, Exh. D [Dkt. No. 144-2] at 22. As I wrote in the Findings of Fact, there is unexplained tension between the state bout agreements and the language of the BPA. *See* Findings of Fact at 15 ("Ultimately, [the extrinsic evidence including the state bout agreements] does not help in further clarifying the legal rights and obligations of the parties; it underscores the dispute instead."). As far as Cruz's second bout is concerned, this dispute is exemplified by Findings of Fact Nos. 100 and 101: "Cruz's second bout under the BPA occurred on December 9, 2023, against Jovanni Straffon in San Francisco, CA. The purse for the second bout under the BPA was $150,000." Findings of Fact 100. And yet, "Matchroom paid $75,000 directly to Cruz, per the State Bout Agreement." Findings of Fact 101. It remains in no

way "undisputed" that the $75,000 referenced in the second bout agreement actually "represented full payment for Contestant's performance." MSJ 5.

The fifth stated fact in dispute is that: "Defendant NCP did not receive any money from Plaintiff's $75,000 purse for Plaintiff's bout." MSJ 6 (citing to Rodriguez Decl. [Dkt. No. 144-1] ¶ 6 ("I, in my individual capacity, or on behalf of NCP never received any money from Plaintiff's $75,000 purse for his December 9, 2023 bout against Jovanni Straffon in San Francisco, California.")). Although Cruz contests this fact, it is aligned with my previous finding. *See* Findings of Fact 102 ("By [December 9, 2023], Cruz had become worried that NCP was not paying him in full. He initiated this lawsuit and instructed Matchroom not to pay any monies to NCP."). It is undisputed that Matchroom did not transfer any funds to defendants after Cruz's second bout, although Cruz alleges that Matchroom held (and is still holding) funds in escrow pending the outcome of this litigation. TAC ¶ 62 [Dkt. No. 66].

The sixth and final fact in dispute presented by defendants is: "At no time did NCP or Rodriguez agree to hold any money for Cruz." MSJ 6 (citing Rodriguez Decl. [Dkt. No. 144-1] ¶ 5 ("At no time did I, in my individual capacity or on behalf of NCP, agree to hold any money in trust for Plaintiff Andy Cruz.")). This fact is not so much "in dispute" as completely against the facts and issues that were borne out during trial. Relevant findings here include: Findings of Fact 64, "NCP received funds on Cruz's behalf pursuant to the BPA . . . Rodriguez filled out the forms to use NCP's account [to receive funds on behalf of Cruz];" Findings of Fact 103–105, "In sum, Matchroom paid NCP a total of $430,750, for the signing bonus and Bouts 1 and 2 under the BPA. Of that amount, NCP paid Sanchez directly $283,470. NCP paid another $81,140 to Cruz's manager and to attorney Pat English, which it argues should be treated as payments to Cruz." Whether defendants agreed to hold Cruz's money for any period of time tremains in dispute.

## II.    Updated Procedural History

On January 16, 2026, I entered the parties' stipulation to dismiss the following causes of action with prejudice from Cruz's TAC: (1) Violation of the Ali Act, 15 U.S.C. § 6308; (2) Violation of the Ali Act, 15 U.S.C. § 6307e(b); (4) Breach of Contract; and (5) Breach of Duty of Good Faith and Fair Dealing. I additionally dismissed NCP's first cause of action with prejudice

5

from its FAXC: (1) Breach of Duty of Good Faith and Fair Dealing.

Because I have already made conclusions of law concerning the parties' claims for declaratory relief, that leaves the following five claims in the case. In Cruz's Third Amended Complaint [Dkt. No. 66]: (3) Violation of Cal. Business and Professions Code §§ 18628 et seq.; (6) Breach of Fiduciary Duty; (7) Conversion; and (8) Violation of California Penal Code § 496. In NCP and Jesse Rodriguez's First Amended Cross-Complaint [Dkt. No. 73]: (2) Unjust Enrichment (or, as I have previously construed it in the Findings of Fact and Conclusions of Law, Quantum Meruit). I presented my thoughts on these remaining causes of action in my December 4, 2025, Order. *See* Dkt. No. 141. I also permitted both parties the opportunity to file a motion for summary judgment on any remaining claims following the parties' meet and confer and resulting stipulation. *Id.* Defendants seek summary adjudication for the remaining causes of action in the TAC. *See* MSJ. Cruz opposed the motion and defendants replied. *See* Oppo.; Reply in support of MSJ ("Reply") [Dkt. No. 146]. I held a hearing on the motion on March 4, 2026.

## LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony

6

United States District Court
Northern District of California

does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

### I.    Cause of Action 3: Violation of Cal. Bus. & Prof. Code §§ 18628 *et seq.*

Cruz contends that defendants violated California Business and Professions Code section 18628, et. seq., which governs boxing in California. He claims that NCP met the statutory definition of a "manager" under section 18628(c) because it received more than 10% of Cruz's signing bonus and purses, but because it was not licensed in accordance with section 18642, defendants were not entitled to the payments they received under California law.

Defendants seek summary adjudication because, they argue, (1) there is no dispute of fact that they did not act as a manager and (2) there is no private right of action for Cruz to bring this claim in the first instance. I frame the issue differently. I previously concluded that defendants' sole role in relation to Cruz was to "act[] as an intermediary to a major boxing promoter." Defendants had no role with Cruz after the BPA was executed: the remaining issue is the amount defendants should be compensated through quantum meruit for their work that *preceded* the BPA, long before Cruz's first bout. Conclusions of Law 18. NCP was not involved in any way with Cruz's bout in California. As a result, this claim, to the extent it could be brought at all, is now moot.

The California State Athletic Commission oversees the sport of boxing as well as the relationship between boxers and their purported managers and promoters. Cal. Bus. & Prof. Code § 18640. It has the "sole discretion, management, control and jurisdiction over all professional and amateur boxing . . . ." *Id.* Section 18642 reads, in pertinent part, that "[n]o person shall participate in any contest or serve in the capacity of a booking agent, manager, trainer, or second, unless he or she has been licensed for that purpose by the commission." *Id.* at § 18642.

Only the California State Athletic Commission has the authority to administer fines pursuant to the statute. *Id.* at § 18843. Violations of the statute can result in criminal prosecution: Section 18870 of the Code, entitled "Unlicensed events," reads: "Any person or promoter to whom this chapter applies who directly or indirectly holds, aids or abets, or attempts to hold, aid or abet the holding of, any contest, match or exhibition without first having obtained a license or permit therefore under this chapter, is guilty of a misdemeanor." *Accord* Cal. Bus. & Prof. Code § 18878 ("Any person who otherwise violates any provision of this chapter is guilty of a misdemeanor."). The statute does not create a civil remedy for its violation.

Nonetheless, Cruz argues that there is a private right of action because other courts have addressed section 18642's definition of "manager" and that I should allow a jury to do the same. *See de la Hoya v. Top Rank, Inc.*, 2001 WL 34624886 at *6–8 (C.D. Cal. Feb. 6, 2001) ("the Court finds that Top Rank is a 'manager' under all three alternative definitions set forth in section 18628"); *Castillo v. Barrera*, 146 Cal. App. 4th 1317, 1326–1328 (2007) ("Because the record as a whole, including the complaint and Castillo's declaration, establishes that he acted as a manager without a written contract and without a license, summary judgment was properly granted."); *George Foreman Assoc's, Ltd. v. Foreman*, 389 F. Supp. 1308, 1312–1315 (N.D. Cal. 1974) ("In at least two respects therefore, this court finds that Associates falls within the statutory definition of 'manager' and is hence subject to the jurisdiction of the State Athletic Commission.").

But this is not a jury question. The cases cited by Cruz interpreted the definition of "manager" under section 18642 to determine the validity of an underlying contract, not as a separate claim in a complaint. They ultimately concluded that the entity or individual acting as a manager did not have the appropriate license before entering into any of the contracts at issue, and therefore any contract entered into by said entity or individual was void. *See, e.g.*, *de la Hoya*, 2001 WL 34624886 at *8 ("Top Rank does not dispute that it is not licensed as a manager. As a manager under the Top Rank Contract as defined by section 18628, this failure alone renders Top

8

Rank's contract with De La Hoya illegal and void."). Defendants did not enter into any bout contracts for or with Cruz.

I have already interpreted the two contracts signed by the parties (the BPA and the New Champion Promotions Promotional Agreement ("NCP PA")) and determined that they are relevant only insofar as defendants' rights to quantum meruit for services rendered in procuring a major boxing promoter for Cruz. *See* Findings of Fact and Conclusions of Law at 23 ("For the foregoing reasons, the NCP PA is not a valid contract and is void. . . . [B]ecause the NCP PA is invalid, NCP has no rights as a promoter for Cruz under the BPA, and only has rights to compensation to the extent of its quantum meruit damages."). There is no additional remedy afforded by the Business and Professions Code for Cruz to assert in trial. Neither agreement suggests that defendants were a manager, the defendants did no work in California for Cruz, and the work for which they are entitled to compensation was completed well before the bouts.

In sum, Cruz cannot state a claim under California Business and Professions Code section 18628 et. seq. The third cause of action is DISMISSED.

## II.    Cause of Action 6: Breach of Fiduciary Duty

To defeat summary judgment on the breach of fiduciary duty claim, Cruz must demonstrate that there is a genuine dispute whether a fiduciary relationship existed between him and defendants, whether defendants breached that duty, and whether any damages resulted from the breach. *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 820 (2011).[4] A fiduciary

---

[4] There is confusion about which state law should apply to this cause of action, which I discuss later in Section V. I intend to analyze it under California state law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). Previously, I considered it under New York state law, given that the BPA was governed by New York state law and contractual obligations related to that contract would require the choice of law to be New York. *See* Order on Cruz's Motion for Summary Judgment [Dkt. No. 94] at 17–18. But, as I have previously concluded, the defendants have no rights or obligations under the BPA. Florida law could conceivably apply as well. Ultimately, the considerations are similar between California,

relationship is

> any relation existing between parties to a transaction wherein one of the parties is duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent. A fiduciary relation in law is ordinarily synonymous with a confidential relation.

*Gilman v. Dalby*, 176 Cal. App. 4th 606, 613–14 (2009) (citing *Herbert v Lankershim*, 9 Cal. 2d 409, 483 (1937) (citation modified). "In the commercial context, traditional examples of fiduciary relationships include those of trustee/beneficiary, corporate directors and majority shareholders, business partners, joint adventurers, and agent/principal." *Id.* "Inherent in each of these relationships is the duty of undivided loyalty the fiduciary owes to its beneficiary, imposing on the fiduciary obligations far more stringent than those required of ordinary contractors." *Id.*

Defendants argue that there is "no existence of a fiduciary relationship" because, in their view, "[i]t is undisputed that Defendants never promised to hold Plaintiff's money. . . [and] that when NCP received any monies from Matchroom, pursuant to the BPA, it was because NCP held the promotional rights to Cruz." Mot. 8. This is wrong. *See* Findings of Fact 64 ("NCP received funds on Cruz's behalf pursuant to the BPA. There is disagreement on why that is the case. Cruz and his managers claim that payment was made from Matchroom to NCP under the BPA because Cruz did not have a U.S. bank count at that time. Rodriguez stated that Cruz's lack of U.S. bank account is not the reason the money was sent directly to NCP."); Findings of Fact 103–105 ("In sum, Matchroom paid NCP a total of $430,750, for the signing bonus and Bouts 1 and 2 under the BPA. Of that amount, NCP paid Sanchez directly $283,470. NCP paid another $81,140 to Cruz's manager and to attorney Pat English, which it argues should be treated as payments to Cruz.").

---

New York, and Florida law. *See, e.g.*, *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002); *P.S. Finance, LLC v. Eureka Woodworks, Inc.*, 184 N.Y.S. 3d 114,139 (2023).

United States District Court
Northern District of California

Defendants cite *Golden Boy Promotions LLC v. Alan Haymon* for the proposition that "[m]anagers have a fiduciary relationship with the boxers they manage, and typically are paid a percentage of the boxer's purse. Boxing promoters, on the other hand, are 'primarily responsible for organizing, promoting, and producing a professional boxing match.'" No. 2:15-CV-3378-JFW-MRW 2017 WL 460736 (C.D. Cal. Feb. 1, 2017) (quoting 15 U.S.C. § 6301(9)). But I have concluded that defendants acted as intermediary to a major boxing promoter and not to promote Cruz in any other capacity. Conclusions of Law 17. The unsettled details of how and why defendants came to be holders of Cruz's money are what the trial will resolve. A jury could determine that the parties had a relationship akin to that of a manager/boxer, a trustee/beneficiary, or some other type of "confidential relation." *Dalby*, 176 Cal. App. 4th at 614. Or, a jury could determine that no such relationship existed at all.

Given the (disputed) facts, a jury could conclude that the relationship between Cruz and defendants was fiduciary in nature because "NCP received funds on Cruz's behalf pursuant to the BPA." Findings of Fact 64. Whether defendants breached the duties inherent in that relationship based on defendants' actions is also an issue for trial. Defendants do not present argument on either the duty or damages element of the claim. Accordingly, I DENY summary adjudication on this claim.

### III.    Cause of Action 7: Conversion

Defendants seek summary judgment that Rodriguez cannot be found individually liable for Cruz's seventh cause of action for conversion. Mot. 9–10. The elements of a conversion claim are: "(1) plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208–209 (2014). Defendants contest that Rodriguez should be subject to this claim because "it is undisputed that all Matchroom payments, pursuant to the BPA, were made to NCP[,] . . . a Nevada corporation." Mot. 10. They continue: "[a]bsent some

11

piercing of the corporate veil, any conversion, or wrongful disposition of property rights could only be attributed to NCP." *Id.*

That may be true. But defendants present no argument why, given at least the testimony of Rodriguez during the bench trial about his personal use of NCP's accounts, a reasonable jury could not conclude that piercing the corporate veil would be appropriate to hold both Rodriguez and NCP liable for any unlawful act of conversion. *See Alexander v. Abbey of the Chimes*, 104 Cal. App. 3d 39, 46 (1980) ("determination of whether a corporation is an alter ego of an individual is ordinarily a question of fact."). Accordingly, I DENY summary judgment on this cause of action.

### IV.   Cause of Action 8: Violation of Cal. Penal Code § 496

Finally, defendants seek to dismiss Cruz's eighth cause of action for violation of California Penal Code section 496. Mot. 10–11. Section 496(a) reads:

> Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170.

Cal. Penal Code § 496(a). Section 496(c) allows an individual "who has been injured by a violation of subdivision (a) . . . [to] bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees." Cal. Penal Code § 496(c).

The statute inherently requires an element of intent. "To prove theft, a plaintiff must establish criminal intent on the part of the defendant beyond mere proof of nonperformance or actual falsity. This requirement prevents ordinary commercial defaults from being transformed into a theft. If misrepresentations or unfulfilled promises are made innocently or inadvertently, they can no more form the basis for a prosecution for obtaining property by false pretenses than

12

can an innocent breach of contract." *Siry Investment, L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 361–62 (2022). Defendants argue that no such intent can be established because of their belief that it is "undisputed that Matchroom's payment to NCP for Plaintiff's bouts was because it was believed NCP held the promotional rights to Cruz and NCP would then divide the fee paid by Matchroom between itself and the fighter." Mot. 10.

That belief may well have been held by Matchroom. But it is still in dispute between Cruz and the defendants. The defendants cannot argue that "the undisputed facts in this case demonstrate a misunderstanding between the parties regarding the characterization of Matchroom's payment to NCP" when Cruz contends that the facts establish that defendants purposely kept money that rightfully belongs to him. *See, e.g.*, Findings of Fact 102 ("By that point, Cruz had become worried that NCP was not paying him in full."). Accordingly, I DENY summary judgment for this claim.

### V.    Which Law Applies

In briefing and at oral argument on the motion, parties raised a pertinent question: Now that I have determined that the NCP PA was an invalid contract and that, therefore, the BPA no longer applies to defendants NCP and Rodriguez in this case, which state law applies to the remaining causes of action? The NCP PA was governed by Florida law, and I previously applied Florida law in making conclusions of law concerning quantum meruit. *See* Conclusions of Law 17, n.7. The BPA is governed by New York law. Earlier in this case, I applied New York law in reviewing the state law causes of action related to the BPA. *See* Order on Cruz's Motion for Summary Judgment [Dkt. No. 94] 17–19. And, one of the remaining causes of action (8— Violation of the California Penal Code) is necessarily governed by California law.

This court sits in the state of California, so there is a colorable argument that all remaining causes of action should be governed by California state law. In my view, it makes sense to either: (1) allow Florida law to govern the quantum meruit cause of action and apply California law to all

United States District Court
Northern District of California

remaining causes of action; or (2) apply California law to all causes of action, including those that arise from the NCP PA.  It is not immediately apparent to me what, if any, consequences would arise from either decision—there is substantial overlap in the states' laws on the remaining issues.  Of course, the parties may have differing analyses.

The Ninth Circuit has recognized that parties are free to stipulate to "which forum's law will govern an action" after the onset of litigation, as long as that stipulation does not contravene public policy.  *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1477 n.1 (9th Cir. 1986).  I will allow the parties the opportunity to so stipulate here.  Neither party has expressed a clear preference towards the application of any state's law for the remaining causes of action.  If the parties are able to agree on which law governs each of the remaining causes of action, they shall file a stipulation by **March 24, 2026**.  If such a stipulation is not possible, they SHALL submit contemporaneous briefs of no more than 5 pages with arguments on which state's law should apply to which causes of action.  At that time, I will determine which law applies.

### CONCLUSION

For the aforementioned reasons, the motion for summary judgment is GRANTED IN PART AND DENIED IN PART.  The third cause of action from Cruz's TAC is DISMISSED.  The case shall proceed to a jury trial on the sixth, seventh, and eighth causes of action in the TAC, and the second cause of action in the FAXC on the schedule determined by the parties' forthcoming confirmation of either a June 12, 2026, or August 17, 2026, trial date.  The parties' stipulation or contemporaneous briefing on state law application is due within two weeks of this Order.

**IT IS SO ORDERED.**

Dated: March 10, 2026



William H. Orrick
United States District Judge